# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 1, 2013 Session

## H. OWEN MADDUX v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 11-0206      Donald P. Harris, Special Judge**

_____

**No. E2012-01809-SC-R3-BP - Filed August 9, 2013**

_____

This direct appeal involves a disciplinary proceeding against a Chattanooga lawyer arising out of his representation of two clients. With one member dissenting, a hearing panel of the Board of Professional Responsibility determined that the lawyer should be suspended from the practice of law for nine months. The lawyer appealed to the Chancery Court for Hamilton County, and the trial court upheld the nine-month suspension, concluding that the evidence supported the finding of the hearing panel's majority that the lawyer's misconduct caused potential injury to one of his clients. In this appeal, the lawyer argues that (1) the hearing panel erred by refusing to set aside the default judgment entered against him based on his failure to respond to the petition for discipline; (2) the record contains no evidence of potential injury resulting from his misconduct; and (3) the hearing panel ascribed too much weight to his prior history of discipline when considering aggravating and mitigating circumstances. Based on our review of the record, we, like the trial court, affirm the hearing panel's decision to suspend the lawyer's license to practice law for nine months.

**Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Chancery Court Affirmed**

_____

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., AND JANICE M. HOLDER, WILLIAM C. KOCH, JR., AND SHARON G. LEE, JJ., joined.

W. Gerald Tidwell, Jr., Chattanooga, Tennessee, for the appellant, H. Owen Maddux.

Krisann Hodges and Kevin D. Balkwill, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

### Factual Background

In 1974, the appellant, H. Owen Maddux, obtained his license to practice law in Tennessee. This is the third time since his licensure that the Board of Professional Responsibility ("Board") has instituted disciplinary proceedings against Mr. Maddux. On each occasion the proceeding has culminated in an appeal to this Court.

At the conclusion of the first appeal in November 2004, this Court suspended Mr. Maddux from the practice of law for thirty days and placed him on probation for one year upon finding evidence in the record that he had converted more than $92,500 in law partnership funds over a three-year period without the knowledge or consent of his partners. Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 38 (Tenn. 2004).

At the conclusion of the second appeal in July 2009, this Court suspended Mr. Maddux for five months for several ethical violations, including mishandling and neglect of a Florida personal injury lawsuit, allowing the statute of limitations to expire on the personal injury claim, failing to communicate adequately with his clients, and commingling personal funds in his trust account. Maddux v. Bd. of Prof'l Responsibility, 288 S.W.3d 340, 347-49 (Tenn. 2009).

The present appeal involves Mr. Maddux's conduct while representing Theodore ("Ted") W. Hayes and his mother, Nancy Hayes, from October 2008 to March 2009. Ted Hayes and Mr. G. Scott Bean had jointly owned and operated TCE Landscaping, a business which performed landscaping, steel erection, drywall, and other similar types of work.[1] Ms. Hayes was not an owner of the business, but she leased to the business the property that served as the business office, loaned money to the business, guaranteed credit cards for the business, allowed the business to use her personal credit cards to purchase needed supplies, and signed promissory notes for loans to the business and vehicles the business purchased. The Hayeses sought Mr. Maddux's legal advice in October 2008 because, according to them, Mr. Bean had removed all funds from business accounts and had taken all business records, equipment, and property. Mr. Bean also was advising customers that TCE Landscaping was operating under a new name, Bean Enterprises, and that Mr. Bean and Mr. Hayes were no longer associated.

---

[1] Mr. Hayes and Mr. Bean used various names to refer to their joint business ventures, including The Cutting Edge, Performance Steel, and Precision Framing and Drywall. For purposes of this appeal we shall refer to these business ventures collectively as TCE Landscaping.

After his initial meeting with the Hayeses, Mr. Maddux sent fifteen or more letters, dated October 31, 2008, to customers of TCE Landscaping, advising as follows:

> This letter is a demand that if you owe money to any of the above named entities that you should pay that money to TCE Landscaping, LLC, and mail it to me where it will be deposited in the Chancery Court of Hamilton County, Tennessee, pending a ruling by the Court as to the dissolution of the LLC and the ultimate payment of creditors of the LLC.
>
> This letter is to also serve you with notice that if you fail to pay TCE Landscaping, LLC, but pay Bean Enterprise[s], then my client, as an officer and manager of TCE Landscaping, LLC, will be forced to file a lien against your project for nonpayment. I hope that will not be necessary.

On November 13, 2008, Mr. Maddux filed a complaint on behalf of the Hayeses against Mr. Bean and TCE Landscaping in the Chancery Court for Hamilton County. On November 26, 2008, attorney Barry L. Abbott entered a notice of appearance as counsel for Mr. Bean in the lawsuit. Subsequently, Mr. Maddux and Mr. Abbott exchanged documents related to the lawsuit and discussed settlement. During this time, Mr. Abbott became aware of the October 31, 2008 letters Mr. Maddux had sent to customers of TCE Landscaping. Thus, when Mr. Maddux moved to withdraw from representing the Hayeses, on February 9, 2009, Mr. Abbott responded by moving the trial court to order Mr. Maddux to pay to the Clerk and Master any funds received in response to the October 31, 2008 letters upon his withdrawal.[2]

Following a March 2, 2009 hearing on both motions, the trial court granted Mr. Maddux's motion to withdraw. Although the trial court denied Mr. Abbott's motion, the trial court ordered Mr. Maddux to file an affidavit explaining the disposition of any monies he received in response to the October 31, 2008 letters and to attach to the affidavit copies of any checks he had received.

Mr. Maddux's affidavit, submitted March 5, 2009, stated his belief that six checks were received in response to the October 31, 2008 letters. However, Mr. Maddux explained that he had located copies of only five checks and could not locate the sixth check or a copy

---

[2] Mr. Maddux's motion to withdraw alleged that Mr. Hayes had failed to return his telephone calls or otherwise communicate with him.

of it. The five checks, each of which was payable to a business entity, totaled over $35,000.[3] Mr. Maddux stated that he gave these five checks to Mr. Hayes.

On March 30, 2009, Mr. Abbott filed a complaint with the Board based on Mr. Maddux's failure to pay the funds collected to the Clerk and Master as the October 31, 2008 letters represented and Mr. Maddux's failure to notify either the trial court or opposing counsel that he had received and given the funds to Mr. Hayes. By a letter dated April 2, 2009, Disciplinary Counsel for the Board sent Mr. Maddux a copy of the complaint, along with notice that failure to respond timely would result in the filing of a notice of petition for temporary suspension. Tenn. Sup. Ct. R. 9, § 4.3. When Mr. Maddux failed to respond, Disciplinary Counsel notified him, by a letter dated April 17, 2009, that a petition for temporary suspension would be filed should he fail to respond within ten days. Five days later, Mr. Maddux filed a response.

The investigation proceeded, with Disciplinary Counsel requesting additional information from Mr. Maddux and Mr. Abbott. On February 8, 2010, Disciplinary Counsel filed a formal petition for discipline alleging that Mr. Maddux's acts and omissions in representing Ted and Nancy Hayes violated Tennessee Rules of Professional Conduct ("RPC") 1.15(b),[4] 4.1,[5] and 8.4(a) and (c).[6] Tenn. Sup. Ct. R. 8, RPC 1.15(b), 4.1,

---

[3] Of the five checks Mr. Maddux received, two were payable to The Cutting Edge, while three were payable to TCE Landscaping.

[4] In 2008, the time of the events at issue in this appeal, RPC 1.15 (b) provided:

> (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such funds or other property. If a dispute arises between the client and a third person with respect to their respective interests in the funds or property held by the lawyer, the portion in dispute shall be kept separate and safeguarded by the lawyer until the dispute is resolved.

Tenn. Sup. Ct. R. 8, RPC 1.15(b) (2008). Amendments to RPC 1.15(b) since 2008 transferred the first two sentences of the 2008 version of RPC 1.15(b) to RPC 1.15(d). See Tenn. Sup. Ct. R. 8, RPC 1.15(d) (2012). Additionally, subsequent amendments deleted the third sentence of the 2008 version of RPC 1.15(b), but substantially similar language now appears in RPC 1.15(e). Id. at RPC 1.15(e) ("When in the course of representation a lawyer is in possession of property or funds in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is
(continued...)

-4-

resolved. The lawyer shall promptly distribute all portions of the property or funds as to which the interests are not in dispute.").

5 RPC 4.1 has not been amended since 2008. The text of the rule then and now provides:

> (a) In the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person.
>
> (b) If, in the course of representing a client in a nonadjudicative matter, a lawyer knows that the client intends to perpetrate a crime or fraud, the lawyer shall promptly advise the client to refrain from doing so and shall discuss with the client the consequences of the client's conduct. If after such discussion, the lawyer knows that the client still intends to engage in the wrongful conduct, the lawyer shall:
>> (1) withdraw from the representation of the client in the matter; and
>> (2) give notice of the withdrawal to any person who the lawyer knows is aware of the lawyer's representation of the client in the matter and whose financial or property interests are likely to be injured by the client's criminal or fraudulent conduct. The lawyer shall also give notice to any such person of the lawyer's disaffirmance of any written statements, opinions, or other material prepared by the lawyer on behalf of the client and which the lawyer reasonably believes may be used by the client in furtherance of the crime or fraud.
>
> (c) If a lawyer who is representing or has represented a client in a non-adjudicative matter comes to know, prior to the conclusion of the matter, that the client has, during the course of the lawyer's representation of the client, perpetrated a crime or fraud, the lawyer shall promptly advise the client to rectify the crime or fraud and consult with the client about the consequences of the client's failure to do so. If the client refuses or is unable to rectify the crime or fraud, the lawyer shall:
>> (1) if currently representing the client in the matter, withdraw from the representation and give notice of the withdrawal to any person whom the lawyer knows is aware of the lawyer's representation of the client in the matter and whose financial or property interests are likely to be injured by the client's criminal or fraudulent conduct; and
>> (2) give notice to any such person of the lawyer's disaffirmance of any written statements, opinions, or other material prepared by the lawyer on behalf of the client and

(continued...)

8.4(a), (c). The petition was served upon Mr. Maddux by certified mail, and he received and accepted service on February 16, 2010, as evidenced by his signature on a certified mail receipt. However, he failed to answer the petition within twenty days of service. See Tenn. Sup. Ct. R. 9, § 8.2.

On April 28, 2010, seventy-one days after the petition was served, Disciplinary Counsel moved for default judgment based on Mr. Maddux's failure to file an answer to the petition. The motion was based on Tennessee Supreme Court Rule 9, section 8.2, which provides that when a lawyer fails to answer a petition within twenty days of service, "the charges shall be deemed admitted; provided, however, that a [lawyer] who fails to answer within the time provided may obtain permission of the Chair to file an answer if such failure to file an answer was attributable to mistake, inadvertence, surprise or excusable neglect." Tenn. Sup. Ct. R. 9, § 8.2. Disciplinary Counsel mailed the motion for default judgment to the same address where Mr. Maddux had received and signed for the petition for discipline. Mr. Maddux did not respond to the motion.

On June 2, 2010, the Chair of the Board appointed a hearing panel to adjudicate the petition for discipline against Mr. Maddux. By order signed on June 9 and filed on June 10, 2010, the hearing panel granted the motion for default judgment and deemed the facts contained in the petition admitted pursuant to Rule 9, section 8.2. The hearing panel pointed out that Mr. Maddux had filed neither an answer, nor any other responsive pleading, to the petition and had not sought or obtained permission from the Board Chair to file an answer beyond the twenty days provided in Rule 9, section 8.2. The hearing panel explained that it

---

[5](...continued)
> that the lawyer reasonably believes may be used by the
> client in furtherance of the crime or fraud.

Tenn. Sup. Ct. R. 8, RPC 4.1 (2012).

[6] RPC 8.4(a) and (c) also have not been amended since 2008 and provide:

> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> . . . .
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Tenn. Sup. Ct. R. 8, RPC 8.4 (a), (c) (2012).

lacked authority to permit the filing of an answer beyond the time provided in Rule 9, section 8.2, absent permission of the Board Chair.

Thereafter, Mr. Maddux filed, pro se, a motion seeking to set aside the default judgment and to file an answer to the petition for discipline based on excusable neglect. Mr. Maddux alleged that he had not received the motion for default judgment and had no knowledge of the motion or the appointment of a hearing panel until June 6, 2010. Mr. Maddux admitted that he had received the petition for discipline on February 16, 2010, but neglected to answer it, explaining that he had just been sued for over $300,000, had financial and marital problems as well as personal obligations, and his "mind was not where it should have been." Mr. Maddux's motion was referred to the Board Chair, who denied it on July 15, 2010. On August 9, 2010, Mr. Maddux filed, through counsel, a motion to reconsider. The Board Chair denied this motion on August 23, 2010.

When the hearing panel convened on January 14, 2011, Mr. Maddux stipulated that he had mailed the October 31, 2008 letters, failed to deposit with the Clerk and Master the more than $35,000 he received in response, given the checks payable to the business entities to Ted Hayes, and failed to advise the trial court or opposing counsel of his intention to give the checks to Ted Hayes rather than deposit them with the Clerk and Master. Mr. Maddux further stipulated that the facts alleged in the petition were deemed admitted due to his failure to answer the petition and that the stipulated acts and omissions constituted "ethical misconduct" in violation of RPC 1.15(b), 4.1, and 8.4(a) and (c).

Testifying at the hearing, Mr. Maddux stated that, when he sent the letters on October 31, 2008, he had originally intended to deposit any funds received with the Clerk and Master. Mr. Maddux explained that he later decided to give the money to Mr. Hayes because Mr. Hayes was financially "destitute" and needed money to support his wife and six children. According to Mr. Maddux, Mr. Hayes essentially demanded the money, explaining that Mr. Bean "was out collecting money too and had collected a bunch of money." Mr. Maddux stated that he did not believe turning over the money to Mr. Hayes would harm anyone and emphasized that he told Mr. Hayes the trial court would require an accounting of the funds before the conclusion of the lawsuit against Mr. Bean. Mr. Maddux confirmed that the checks were released to Mr. Hayes alone, and none was given to Ms. Hayes. Mr. Maddux emphasized that the checks were not released until Mr. Hayes executed unconditional waivers of liens on behalf of the business entities and in favor of the paying customers.

Mr. Maddux admitted that his actions were not consistent with the October 31, 2008 demand letters and acknowledged that he did not inform customers, opposing counsel, or the trial court when he opted to give the checks to Mr. Hayes rather than deposit them with the

Clerk and Master. Mr. Maddux testified that, when he decided to give the checks to Mr. Hayes, he did not realize his conduct violated RPC 1.15(b) but now understands his conduct violated this rule. Mr. Maddux testified that he received approximately $7,200 for the legal services he provided the Hayeses, but his fee was not paid from monies received in response to the October 31, 2008 letters.

In the remainder of his testimony, Mr. Maddux described his personal and professional background. Mr. Maddux and his wife had been married forty years and had four grown children. After Mr. Maddux served in the military and received an honorable discharge, he worked for a year at the Y-12 facility in Oak Ridge, Tennessee, before enrolling in and completing law school at the University of Tennessee. After law school, Mr. Maddux returned to the Chattanooga area, where he had grown up, and began practicing law in 1974. Mr. Maddux explained that he had practiced law as a partner in various firms for several years, but had eventually transitioned from a partnership practice to a space-sharing arrangement only. Twenty-one months before the hearing, Mr. Maddux ended the space-sharing arrangement and set up his office as a solo practitioner. Mr. Maddux, two months shy of his sixty-sixth birthday at the time of the hearing, expressed his intention to continue practicing law in Tennessee for "another four or five years."

As for law-related organizations, Mr. Maddux explained that he had been a member of the Trial Lawyers Association, as well as the Lookout Mountain, Chattanooga, and Georgia Bar Associations. He also had served a two-year term as a director of the Chattanooga Bar Association. As for civic activities, Mr. Maddux described the various positions he had held in his church and the various youth sports teams he had coached when his own children were young. He recounted, as well, his eleven-year tenure as a Scout master, during which time he assisted his own three sons and more than fifteen other Scouts attain the rank of Eagle Scout.

Nancy Hayes also testified before the hearing panel. She confirmed that her son and Mr. Bean had been business partners for a couple of years. She described her own role as that of "office manager, project manager," explaining that she made the travel arrangements, rented the equipment needed for projects, served as bookkeeper, until approximately six weeks before Mr. Bean emptied the business accounts, and owned and leased to the business the property in which the business office was located. Ms. Hayes also provided the business financial assistance, consisting of loaning the business approximately $95,000 by taking out a home equity loan on her home, signing a $50,000 promissory note, signing promissory notes for three business vehicles, guaranteeing business credit cards, and allowing the business to use her personal credit cards for business expenses. Ms. Hayes felt that, as compared to her son and Mr. Bean, she had "contributed the greater part of the monies" to keep the business afloat. Ms. Hayes estimated her own financial losses from the business as

"conservatively, $275,000," and she had received no money from Mr. Hayes, Mr. Bean, or Mr. Maddux as repayment of her financial contributions. Ms. Hayes had been required to file for Chapter 13 bankruptcy protection to save the home in which she lived, and foreclosure proceedings were underway against the property she owned and had leased to the business for use as an office.

Ms. Hayes testified that she paid Mr. Maddux's fee, recalling that she signed a promissory note initially because she needed time to raise the money. A couple of weeks after their first meeting, she had raised enough money to pay the first of three installments. Ms. Hayes confirmed that Mr. Maddux's fee was not paid from the monies received in response to the October 31, 2008 letters.

At the conclusion of the proof, the three-member hearing panel unanimously found, "[b]y virtue of the default judgment, as well as [s]tipulation 26[7] agreed to by the parties," that Mr. Maddux violated RPC 1.15(b), 4.1, and 8.4(a) and (c) and that he was subject to discipline for these violations. The hearing panel unanimously rejected Disciplinary Counsel's request for a suspension of one year or greater. However, after considering the ABA Standards for Imposing Lawyer Sanctions,[8] the hearing panel was not unanimous as to the appropriate sanction. A majority of the hearing panel concluded that a nine-month suspension was appropriate. Although finding no evidence to show that Mr. Maddux's conduct caused actual injury, the hearing panel majority found evidence to show that Mr. Maddux's conduct caused potential injury to debtors of the business. As for Ms. Hayes specifically, the hearing panel majority found that she "lost an opportunity to recover at least a portion of her capital investment" when Mr. Maddux gave the $35,000 to Mr. Hayes alone. As for aggravating circumstances, the majority gave great weight to Mr. Maddux's disciplinary history, which they found involved similar types of misconduct and included two prior suspensions of thirty days and five months, respectively. The hearing panel also afforded significant weight to Mr. Maddux's substantial experience in the practice of law and gave some weight, albeit not substantial, to Mr. Maddux's failure to respond timely to the petition for discipline and requests for information in this matter and in his prior disciplinary

---

[7] The text of stipulation 26 is as follows:

> The acts and omissions by [Mr. Maddux] as set forth in [the] paragraphs above related to the complaint filed by [Mr. Abbott] constitute ethical misconduct in violation of the following Rules of Professional Conduct: 1.15(b), Safekeeping Property; 4.1, Truthfulness And Candor In Statements To Others; and 8.4(a)(c), Misconduct.

[8] American Bar Association, Standards for Imposing Lawyer Sanctions, (1982) (amended1992) (hereinafter "ABA Standards").

proceedings. As for mitigating factors, the hearing panel gave some weight to Mr. Maddux's expressions of remorse, but noted that this fact did not weigh heavily in mitigation. The hearing panel also gave some mitigating weight, but less than determinative, to the fact that Mr. Maddux "did not act out of dishonest or selfish motives . . . [and] apparently acted to help a client who he believed was in 'desperate' need." The hearing panel pointed out, however, that Mr. Maddux did nothing to confirm any facts related by Mr. Hayes before turning "over some $35,000 in which others had interest."

The dissenting hearing panel member would have imposed a less serious sanction because he found no proof that Mr. Maddux's conduct caused actual or potential injury and characterized the proof of potential injury to Ms. Hayes as "too speculative." The dissenting hearing panel member otherwise agreed with the majority's analysis of aggravating and mitigating factors, but concluded that the appropriate sanction was a thirty-day suspension.

On March 21, 2011, Mr. Maddux filed a petition for writ of certiorari in the Chancery Court for Hamilton County. By order entered July 24, 2012, the Chancery Court affirmed the hearing panel majority's judgment, finding substantial and material evidence to support the hearing panel's finding of potential injury to Ms. Hayes and determining that the nine-month suspension was not arbitrary or capricious. Thereafter, Mr. Maddux appealed to this Court. See Tenn. Sup. Ct. R. 9, §1.3.

## Standard of Review

As part of our inherent duty to regulate the practice of law in Tennessee, this Court bears the ultimate responsibility for sanctioning attorneys who violate ethical rules. Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 267 (Tenn. 2012). To fulfill this responsibility, we have established a system where attorneys formally charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel, which must determine the disciplinary penalty. Cowan, 388 S.W.3d at 267 (citing Tenn. Sup. Ct. R. 9, § 8.2). A lawyer dissatisfied with a hearing panel's decision may prosecute an appeal to the circuit or chancery court and then directly to this Court, where our review is upon the transcript of the record from the trial court, including the record of the evidence presented to the hearing panel. Tenn. Sup. Ct. R. 9, § 1.3. We apply the same standard of review as that applied by a trial court and will not disturb the hearing panel's decision unless

> the rights of the petitioner have been prejudiced because the
> panel's findings, inferences, conclusions or decisions are: (1) in
> violation of constitutional or statutory provisions; (2) in excess
> of the panel's jurisdiction; (3) made upon unlawful procedure;
> (4) arbitrary or capricious or characterized by abuse of

discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3; see also Cowan, 388 S.W.3d at 267. We review questions of law de novo but do not substitute our judgment for that of the hearing panel as to the weight of the evidence on questions of fact. Cowan, 388 S.W.3d at 267. These principles guide our review of the issues Mr. Maddux has raised in this appeal.

**Analysis**

Default Judgment

Tennessee Supreme Court Rule 9, section 8.2 delineates the procedures applicable in formal disciplinary proceedings. First, Disciplinary Counsel must file with the Board and serve upon the lawyer a formal petition for discipline which is "sufficiently clear and specific to inform the [lawyer] of the alleged misconduct." Tenn. Sup. Ct. R. 9, § 8.2. Within twenty days after service, the lawyer must serve an answer on Disciplinary Counsel, unless the time is extended by the Chair of the Board. Id. If a lawyer fails to answer a formal petition for discipline, the charges "shall be deemed admitted." Id. However, a lawyer who fails to answer within the time provided "may obtain permission from the Board Chair to file an answer if such failure to file an answer was attributable to mistake, inadvertence, surprise or excusable neglect." Id.

In this case, Mr. Maddux failed to file an answer within the time provided in Rule 9, section 8.2 or request an extension of that time. When Disciplinary Counsel filed the motion for default judgment seventy-one days after the petition was served, Mr. Maddux again failed to respond to the motion. Although Mr. Maddux filed a motion to set aside the default judgment and a motion to re-consider the denial of his motion to set aside, he never submitted a proposed answer to the formal petition for discipline. Despite Mr. Maddux's assertion that he did not receive the motion for default judgment, he has consistently acknowledged receiving the formal petition for discipline. As he did before the hearing panel, Mr. Maddux maintains that he neglected to answer the petition because he had just been sued for over $300,000, was experiencing financial and marital difficulties, was focused on maintaining a close relationship with his four grown children, and was attending to the obligations of his personal life, which "was not uneventful." Mr. Maddux recognizes that he should have promptly filed an answer but states that his "mind was not where it should have been" because of the foregoing "distractions which are significant." Mr. Maddux contends that, had he received a copy of the motion for default judgment, he would have promptly filed an answer to the petition.

Before addressing the merits of his argument regarding the default judgment, it is appropriate to point out that, prior to the hearing, Mr. Maddux stipulated to the truth of the key facts alleged in the petition for discipline and also stipulated that his stipulated acts and omissions constituted ethical misconduct in violation of RPC 1.15(b), 4.1, and 8.4(a) and (c). During his testimony before the hearing panel, Mr. Maddux admitted that his handling of the funds received in response to the October 31, 2008 letters violated Rule 1.15(b). Furthermore, despite the default judgment and the stipulations, the hearing panel afforded Mr. Maddux great leeway by allowing him to testify and to present any proof he wished concerning his conduct. At the conclusion of the proof, Disciplinary Counsel stated, in response to questioning from hearing panel members, that the default judgment established only the truth of the facts alleged in the petition and did not remove from the hearing panel's purview the question of whether Mr. Maddux's conduct violated ethical rules. Based on the pre-hearing stipulations and the proof and testimony Mr. Maddux presented to the hearing panel, a strong argument can be made that Mr. Maddux waived his right to challenge the denial of his motion to set aside the default judgment. Nonetheless, we will address this issue on the merits. See Tenn. R. App. P. 13(b).

In determining whether to set aside a default judgment based on excusable neglect, a court must first determine "whether the conduct precipitating the default was willful. If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds. . . ." Discover Bank v. Morgan, 363 S.W.3d 479, 494 (Tenn. 2012). This is true because willfulness and excusable neglect are inherently incompatible. Id. at 493. Willful conduct includes deliberate choices, as well as flagrant and unexplained violations of procedural rules. Id. at 493-95. If the court determines that the defaulting party's conduct was careless, inattentive, or negligent, but not willful, then the court must next consider "whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief." Id. at 494. A court may also consider any other factor deemed relevant. Id.

Applying these principles, we conclude that Mr. Maddux's deliberate choice not to answer the petition constituted a flagrant violation of Rule 9, section 8.2 and amounted to willful conduct. We do not minimize the legal, financial, and marital difficulties or the family and personal obligations which may have been facing Mr. Maddux at the time he received the petition. Nonetheless, when faced with such difficulties and obligations, attorneys may not simply choose to ignore procedural requirements and later seek relief from the inevitable consequences of their deliberate choices based on excusable neglect. Mr. Maddux, who had already been disciplined—in part for failing to respond timely to a petition for discipline—certainly was not ignorant of the detrimental consequences that can result from choosing not to respond. See Maddux, 288 S.W.3d at 347, 349. Such willful conduct is incompatible with the concept of excusable neglect. Discover Bank, 363 S.W.3d at 493.

Thus, we need not address whether Mr. Maddux had a meritorious defense or whether the Board would have been prejudiced had Mr. Maddux's motion been granted. The willfulness of Mr. Maddux's conduct is alone a sufficient basis for our decision affirming the denial of his motion to set aside the default judgment.[9]

## Appropriate Sanction

Mr. Maddux next argues that his nine-month suspension is excessive because there is no evidence to support the hearing panel's finding, affirmed by the trial court, that his conduct caused potential injury to Ms. Hayes. The Board responds that substantial and material evidence supports the hearing panel's finding of potential injury to Ms. Hayes.

We begin our analysis with the ABA Standards, which are the guideposts hearing panels and courts in Tennessee use when determining appropriate, consistent sanctions for attorney misconduct. Tenn. Sup. Ct. R. 9, § 8.4; Cowan, 388 S.W.3d at 268; Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 26 (Tenn. 2012). The ABA Standards provide a framework designed to give "courts the flexibility to select the appropriate sanction in each particular case of lawyer misconduct." ABA Standards, Theoretical Framework. The ABA Standards "are not designed to propose a specific sanction for each of the myriad of fact patterns in cases of lawyer misconduct," and they are "not analogous to criminal determinate sentences." Id.

When using the ABA Standards to determine an appropriate sanction for lawyer misconduct, courts must consider four factors: (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. ABA Standard 3.0; Cowan, 388 S.W.3d at 268. Consideration of these factors may be accomplished by answering the following four questions:

> (1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?);
>
> (2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?);

---

[9] In affirming the hearing panel and trial court decisions, we do not retreat from the general rule that default judgments run counter to the judicial system's preferred objective of disposing of cases on the merits. Discover Bank, 363 S.W.3d at 490 n.20; Henry v. Goins, 104 S.W.3d 475, 481 (Tenn. 2003). We simply hold that Mr. Maddux failed to establish grounds for setting aside the default judgment.

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?); and

(4) Are there any aggravating or mitigating circumstances?

ABA Standards, Theoretical Framework. The first question is critical because the presumptive sanctions set out in the ABA Standards are organized by the type of duty the lawyer has violated. ABA Standards 4, 5, and 6 delineate the presumptive sanctions for a lawyer's violation of a duty owed to a client, the public, or the legal system, respectively, while ABA Standard 7 describes the presumptive sanctions for a lawyer's violation of a duty owed to the legal profession. See ABA Standards 4-7; see also Cowan, 388 S.W.3d at 268 (discussing the organization of the ABA Standards). ABA Standard 8 describes the presumptive sanctions for lawyers who have been previously disciplined. ABA Standard 8.

After identifying the duty or duties violated and, in turn, the relevant ABA Standard(s), the disciplinary authority must next determine which presumptive sanction, from among the range provided in each ABA Standard, applies in the particular case before it. This determination requires a careful consideration of the facts because the severity of the presumptive sanction varies depending upon the lawyer's mental state—whether the lawyer acted intentionally, knowingly, or negligently—and the seriousness of the actual or potential injury caused by the lawyer's misconduct. ABA Standards, Theoretical Framework ("To assign a sanction, however, it is necessary to go further, and to examine each lawyer's mental state and the extent of the injuries caused by the lawyer's actions."). To aid in this determination, the ABA Standards define "intent," "knowledge," "negligence," "injury," and "potential injury."[10]

_____

[10] The ABA Standards defines these terms as follows:

"Injury" is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from "serious" injury to "little or no" injury; a reference to "injury" alone indicates any level of injury greater than "little or no" injury.

"Intent" is the conscious objective or purpose to accomplish a particular result.

"Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

(continued...)

-14-

After identifying the presumptive sanction applicable in a particular case, the disciplinary authority must next, and finally, determine whether any aggravating or mitigating circumstances warrant increasing or decreasing the presumptive sanction. ABA Standard 9.1; Cowan, 388 S.W.3d at 268. To aid in this determination, the ABA Standards include a non-exhaustive listing of circumstances that may be considered in aggravation and mitigation, as well as a listing of circumstances that should not be considered as either aggravating or mitigating. See ABA Standards 9.21, 9.22, 9.32, 9.34; Lockett, 380 S.W.3d at 28 (describing the aggravating circumstances in the ABA Standards as "illustrative rather than exclusive").

Applying the foregoing framework, we affirm the trial court's finding that Mr. Maddux's misconduct involved the violation of a duty owed to his clients, Mr. and Ms. Hayes. See RPC 1.15(b). We also affirm the trial court's and hearing panel's finding that Mr. Maddux's misconduct involved the violation of duties owed to third persons and the legal profession. See RPC 4.1, 8.4(a) and (c). As a result, we conclude, as did the hearing panel and the trial court, that ABA Standards 4 and 7 describe the range of presumptive sanctions applicable in this case.

Determining the specific presumptive sanction within the range provided in ABA Standards 4 and 7 is the issue on which the hearing panel disagreed. The hearing panel majority concluded, based on its assessment of the proof, that ABA Standards 4.12 and 7.2 supply the presumptive sanction—suspension—applicable to Mr. Maddux's misconduct. The dissenting hearing panel member assessed the proof differently, and as a result, viewed ABA Standards 4.14 and 7.4 as describing the appropriate presumptive sanction—admonition—for Mr. Maddux's misconduct. The trial court agreed with the hearing panel majority. The relevant ABA Standards state as follows:

---

[10](...continued)

> "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

> "Potential injury" is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct.

ABA Standards, Definitions.

4.1 Failure to Preserve the Client's Property

Absent aggravating or mitigating circumstances, upon application of the factors set out in 3.0, the following sanctions are generally appropriate in cases involving the failure to preserve client property:

. . . .

4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

. . . .

4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

. . . .

7.0 Violations of Other Duties Owed As A Profession

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from representation, or failure to report professional misconduct.

. . . .

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

. . . .

> 7.4 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.

ABA Standards 4.1, 4.12, 4.14, 7.0, 7.2, and 7.4.

The hearing panel unanimously found that Mr. Maddux acted knowingly, and Mr. Maddux has not challenged this finding. The disagreement among the hearing panel members as to the relevant ABA Standards turns on whether Mr. Maddux's conduct caused potential injury. The hearing panel majority concluded that Mr. Maddux's conduct created potential injury to Ms. Hayes, and the trial court affirmed this finding.[11] The dissenting hearing panel member concluded that Mr. Maddux's conduct created little or no potential injury to anyone. Adopting the decision of the dissenting hearing panel member, Mr. Maddux asserts that the proof does not show potential injury to Ms. Hayes.

We disagree and conclude that substantial and material evidence supports the hearing panel's finding, affirmed by the trial court, that Mr. Maddux's conduct, at the very least, created potential injury to Ms. Hayes. As already noted, the ABA Standards define "potential injury" as "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." ABA Standards, Definitions. The proof in this record established that Ms. Hayes used a home equity loan to lend the business approximately $95,000, guaranteed business credit cards, allowed the business to use her personal credit cards to purchase needed materials, signed notes for the business, and leased a house she owned to the business for use as an office. Ms. Hayes testified that, as compared to Mr. Hayes and Mr. Bean, she "contributed the greater part of the monies" necessary to keep the business afloat. Mr. Maddux was well aware of Ms. Hayes's financial contributions to the business. Indeed, he filed a complaint on her behalf against Mr. Bean and TCE Landscaping, specifically itemizing the amounts owed to Ms. Hayes and seeking an award of damages.[12] The purpose of the October 31,

---

[11] The trial court affirmed based solely on its finding that Mr. Maddux's conduct caused potential injury to Ms. Hayes as a client. The trial court found little or no potential injury to owners, debtors, and creditors of the business.

[12] Paragraphs nine and ten of the complaint Mr. Maddux filed on behalf of the Hayeses alleged that Ms. Hayes had used her home equity line of credit to lend the business $94,973.09, that she had guaranteed
(continued...)

-17-

2008 letters, demanding payment from the customers of TCE Landscaping and representing that payments would be deposited with the Clerk and Master pending a ruling in the lawsuit, was to protect the separate interests of Mr. Hayes and Ms. Hayes. The record contains no evidence that Ms. Hayes released her interest in the more than $35,000 Mr. Maddux received and turned over to Mr. Hayes. Furthermore, no proof in the record suggests that Mr. Maddux advised Ms. Hayes of his intent to give Mr. Hayes these monies, despite Mr. Maddux's obligation to represent the interests of both his clients. Rather, the record indicates that Ms. Hayes was not present when Mr. Maddux turned over the checks to Mr. Hayes. Ms. Hayes's potential injury was reasonably foreseeable at the time Mr. Maddux gave to Mr. Hayes alone checks payable to the business entities that were indebted to Ms. Hayes. The potential injury to Ms. Hayes was neither speculative nor uncertain.

The lack of proof of an intervening factor or event which *prevents* actual injury from occurring does not undermine or preclude a finding of potential injury. As already noted, the ABA Standards are guidelines designed to provide courts flexibility to select appropriate sanctions in each particular case. Ascribing a technical or rigid meaning to the term "potential injury" would defeat this important purpose. Furthermore, rather than precluding a finding of potential injury, we view the lack of proof of an intervening factor or event as suggesting, at least in this case, that the potential injury likely evolved into actual injury. Ms. Hayes testified that she lost "conservatively" $275,000 from her involvement with the business, that she has never been repaid any of the monies the business owed her, that she has been required to file for bankruptcy protection to retain her home, and that the property she owned which housed the business office, is now in foreclosure. An argument can be made that, by depriving Ms. Hayes of any portion of the $35,000, money she could have used to reduce her indebtedness, Mr. Maddux's misconduct caused her actual injury. Neither the hearing panel nor the trial court found actual injury, and we need not do so to resolve this appeal. Rather, we affirm based solely on our conclusion that substantial and material evidence supports the finding of potential injury to Ms. Hayes.

---

[12](...continued)
an American Express Card for the business which had a balance in excess of $20,600, that she had guaranteed a CitiBank Visa Card for the business, which had a balance in excess of $3,349.30, that she had allowed the business to charge in excess of $9,900 worth of materials on her personal Sears credit card, and that she had rented the business a property to use as its office and was owed $2,390 in rent for September, October, and November 2008. Not before us in this appeal is the issue of whether Mr. Maddux's joint representation of Mr. Hayes and Ms. Hayes in the lawsuit against the business entities in which Mr. Hayes allegedly owned an interest amounted to a conflict of interest, as defined in RPC 1.7(a), and prohibited the joint representation, except as provided in RPC 1.7(b).

Given the material and substantial evidence establishing potential injury to Ms. Hayes, Mr. Maddux's client and a creditor of the business, we agree with the hearing panel majority and the trial court that ABA Standards 4.12 and 7.2 apply in this case. Thus, the presumptive sanction for Mr. Maddux's misconduct was suspension.[13] We turn next to consider whether the nine-month suspension is excessive, as Mr. Maddux claims.

Aggravating and Mitigating Circumstances

In setting Mr. Maddux's suspension at nine months, the hearing panel considered as aggravating circumstances Mr. Maddux's disciplinary history, his substantial experience in the practice of law, and his failure to respond timely in this case and in his prior disciplinary proceedings. Mr. Maddux does not take issue with the hearing panel's consideration of these aggravating circumstances and agrees that his disciplinary history is an aggravating factor. Mr. Maddux argues, however, that the hearing panel afforded too much weight to his disciplinary history, failed to judge this case on its own merits, and punished him for his prior disciplinary actions. Mr. Maddux also asserts that a nine-month suspension of an attorney his age is, as a practical matter, disbarment; thus, he urges us to reduce the suspension to thirty days or a public censure.

The hearing panel carefully considered the applicable ABA Standards, reviewed the record, analyzed the proof to determine which aggravating and mitigating circumstances were established, and balanced the aggravating and mitigating circumstances. Although Disciplinary Counsel advocated for a one-year suspension, the hearing panel, after considering both the aggravating and mitigating circumstances, imposed the lesser nine-month suspension. The hearing panel appropriately weighed Mr. Maddux's disciplinary history heavily in aggravation against him, as Mr. Maddux's prior disciplinary proceedings involved similar misconduct, specifically misconduct involving dishonesty, fraud, deceit, or misrepresentation and mishandling of property in which others claimed an interest. Based

---

[13] ABA Standard 8.2, describing presumptive sanctions for matters involving prior discipline, also indicates suspension is an appropriate presumptive sanction in this matter. ABA Standard 8.2 ("Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."). On the other hand, ABA Standard 8.1(b) indicates disbarment could have been viewed as the appropriate presumptive sanction for Mr. Maddux's conduct. ABA Standard 8.1(b) ("Absent aggravating or mitigating circumstances, . . . [d]isbarment is generally appropriate when a lawyer . . . has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.").

on our review of the record, the hearing panel's imposition of a nine-month suspension is not arbitrary or capricious and is supported by substantial and material evidence.

## Conclusion

We affirm the judgment of the trial court and the hearing panel suspending Mr. Maddux from the practice of law for nine months. Costs of this appeal are taxed to H. Owen Maddux, and his surety, for which execution, if necessary, may issue.

_____
CORNELIA A. CLARK, JUSTICE