# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 9, 2014 Session

## R. SADLER BAILEY v. BOARD OF PROFESSIONAL RESPONSIBILITY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-13-0157-2     Paul G. Summers, Senior Judge**

_____

**No. W2013-01979-SC-R3-BP - Filed August 18, 2014**

_____

The Board of Professional Responsibility instituted a lawyer disciplinary proceeding against an attorney based on complaints it received from a judge and opposing counsel regarding the attorney's disruptive behavior during trial proceedings. A hearing panel found that the attorney had violated several Rules of Professional Conduct and suspended him from the practice of law for sixty days. On appeal, the Chancery Court for Shelby County affirmed the hearing panel's finding that the attorney had violated several ethical rules but reversed the suspension, instead recommending a public censure. The Board of Professional Responsibility appealed to this Court. We reverse the Chancery Court's reduction of discipline and reinstate the hearing panel's imposition of a sixty-day suspension.

**Tenn. Sup. Ct. R. 9, § 1.3 Direct Appeal; Judgment of the Chancery Court Reversed in Part and Affirmed in Part; Judgment of the Hearing Panel of the Board of Professional Responsibility Reinstated**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Krisann Hodges, Brentwood, Tennessee, for the appellant, the Board of Professional Responsibility.

Donald Capparella and Tyler Chance Yarbro, Nashville, Tennessee, for the appellee, R. Sadler Bailey.

# OPINION

## I. Factual and Procedural History

This case arose out of complaints filed with the Tennessee Board of Professional Responsibility (the "Board") by the judge and opposing counsel in a medical malpractice case, <u>Watkins v. Methodist Healthcare System</u>, alleging that the appellee, Robert Sadler Bailey, had engaged in disruptive and disrespectful conduct during the trial.

Mr. Bailey has been licensed to practice law in Tennessee since 1985 and is a solo practitioner in Memphis, Tennessee. Mr. Bailey was the lead plaintiff's attorney in <u>Watkins</u>, representing an eight-year-old girl who was allegedly the victim of a traumatic birth injury. Methodist Healthcare System was represented by Lee Chase III, John Hall, and Robert Shannon. Judge Karen Williams presided. By the time the jury trial began on March 17, 2008, the case had been pending for several years, during which time over 740 pleadings, including five requests for interlocutory or extraordinary appeals, had been filed. Judge Williams described the case as extraordinarily "hotly" contested with a "highly unusual" "level of animosity" between the attorneys. The attorneys for each party repeatedly accused each other of misrepresenting the facts of the case, bullying, and lying to the court.

On the morning of March 26, 2008, shortly before Mr. Bailey was to begin his opening statement, Judge Williams repeated a previous admonition to counsel against making speaking objections. Judge Williams instructed the attorneys to instead "[s]tand up, say I object, and sit down. Do not interrupt each other." According to Judge Williams, she was "trying to keep [the attorneys] on topic" and control their behavior. Mr. Bailey then delivered his opening statement, during which defense counsel asked four times to approach the bench in order to make objections.

As the proceedings resumed that afternoon but before the jury returned to the courtroom, Mr. Hall asked Judge Williams to reconsider an earlier evidentiary ruling. As it became apparent that Judge Williams might reverse herself, Mr. Bailey became upset and addressed the court as follows:

> Now, do you want this case to be about whether there was an appointment between the 16th and the 21st? Do you want the case to be about whether [the plaintiff's mother] called the doctor or whether she kept an appointment? If that's what you want, then you can save me and this child a hundred thousand dollars, you know, because—let's just take the mistrial now that we're all going to get because, you know, we don't—we need to try the case on the issues here . . . . Surely, Judge, you have to—you have to see that your rulings

-2-

that you have made on these issues, they mean nothing if we don't enforce them . . . .

Both sides argued vehemently, until Judge Williams in large part reaffirmed her earlier ruling. Judge Williams then stated, "the Court has ruled on this topic. Would you like a mistrial or would you like to be seated?" At this point Mr. Bailey said "No" and agreed to be seated. A moment later, Mr. Bailey objected again, and Judge Williams urged, "Let's just get this going. It's 2:30 in the afternoon. You can pop up out of your chair just like they popped up out of theirs. Let's get the jury in here. I've never so pretried a case in my life." Despite Judge Williams's statement, Mr. Bailey continued to argue his point, stopping just before the jury entered the courtroom.

When Mr. Shannon began to deliver the opening statement for the defense, Mr. Bailey immediately stood up to object, delivering the first of twelve objections, nearly all of which were speaking objections. On four occasions Judge Williams had to call both attorneys to the bench to discuss Mr. Bailey's complaints. Although Judge Williams upheld some of Mr. Bailey's objections and Mr. Shannon withdrew some remarks, after several interruptions Judge Williams instructed Mr. Bailey to let Mr. Shannon finish the defense's opening statement, declaring that she had "never heard so much squawking in opening comment in [her] life." Despite this admonition, Mr. Bailey objected twice more before Mr. Shannon completed his statement.

Beginning at 9:13 a.m. the next day, March 27, 2008, Mr. Bailey made a series of comments to Judge Williams outside the presence of the jury. Mr. Bailey began by criticizing Judge Williams's rulings of the previous day, and he continued to criticize her conduct of the trial for several minutes.

> Now, quite frankly, Judge, I cannot imagine why this [c]ourt would not want me to call attention to a correct statement of the law. It is bizarre to me that this [c]ourt somehow feels that I should be in any way limited, inhibited, or proscribed from telling the jury the correct standard of law[.]
> . . . .
> I've said to you so many times [that] if you have time to read, if you have time to hear from both sides to think about it, you generally get it right. Quite frankly, Judge, when you don't have that, you almost always get it wrong.
> . . . .
> We are on pace here to set a world record for reversible error if we don't straighten this out.
> . . . .

And I'm not worried about 50 dollars that you want to wave in front of me on a salmon-colored card.[1] I'm worried about the 50 million [dollars] that's at stake if this little girl is deprived of justice.

. . . .

Do you want to set a world record for error?

. . . .

For crying out loud, in essence, your [c]ourt's analysis is because a lawyer tries to engage in discovery and do his job, he is therefore assisting the Defendant in making a case. That's crazy. That's crazy.

. . . .

You know, another thing, when is this [c]ourt going to take offense to a lawyer lying to you? I mean, is it ever going to happen?

. . . .

What's so offensive to me is they make it up all the time and you don't seem to care that they make it up all the time.

. . . .

They lie to you and you don't care. What do I do about a lawyer that will lie to the [c]ourt and what do I do about a [j]udge that doesn't care? How do you think you can get it right if you're not going to hold lawyers to the standard of telling you the truth?

At 9:30 a.m. Mr. Hall moved for a mistrial, accusing Mr. Bailey of strategically bullying the court and prejudicing the proceedings. Mr. Bailey responded by arguing that he was just trying to obtain a fair trial for his client. He then complained that Judge Williams was doing something "so patent, so obviously wrong" that "it defie[d] [his] sense of right and wrong as to how [he] [could not] get that through to [her]," and he again called her ruling "bizarre." He claimed that the trial judge had "never, at any time, demonstrated a willingness to enforce [her] rulings," and that he was merely "trying to keep [the defense] from running the [c]ourt."

At 9:43 a.m., Judge Williams denied the defense request for a mistrial, explaining:

If the [c]ourts of Shelby County [were to] grant a mistrial every time Mr. Bailey gets on his soapbox he would never try another case in this [C]ounty. That's just the way Mr. Bailey tries his cases. That's why I [have] ignored so

---

[1] This reference is to the "pink cards" Judge Williams used to cite attorneys for contempt. The cited attorney would have to pay a $50.00 fine to the clerk's office and bring back a receipt before the trial could resume.

much that has gone on during pretrial because, quite frankly, Mr. Bailey, I
don't listen to it.

When Mr. Bailey responded, "That's pretty clear, Judge," Judge Williams told him to sit
down and stated that his comments were "out of order." Only once before, Judge Williams
then observed, had she "seen a lawyer try to so totally prevent the defense from having a
defense," and she commented that if Mr. Bailey had his way, "the defense would be stripped
to nothing." After Judge Williams finished speaking, Mr. Bailey said in a soft voice, "Oh,
my God." Almost immediately afterwards, at 9:47 a.m., Judge Williams recessed the
proceedings.

When the court reconvened at 10:27 a.m., Judge Williams announced that "[t]he
[c]ourt is going to grant a mistrial based on Mr. Bailey's contentious conduct toward the
[c]ourt." No specific reference was made to a criminal contempt charge at this time. Judge
Williams then dismissed the jurors and adjourned court until 2:00 p.m.

After the mistrial, Mr. Bailey and his co-counsel decided that they needed to settle the
Watkins case quickly. They contacted Mr. Chase, who made an offer just slightly below an
amount the defense had offered shortly before trial. Mr. Bailey made a preliminary
agreement with Mr. Chase to accept the settlement offer, with the understanding that any
monetary sanctions Judge Williams might impose upon Mr. Bailey or his client, such as
defense court costs, would be ignored.

After coming to this arrangement, Mr. Bailey and Mr. Chase telephoned[2] Judge
Williams, at which point Mr. Bailey informed Judge Williams that if she could "excuse
[them] from having to come back at [2:00 p.m.], this case would be done." When Judge
Williams reiterated that she would see them at 2:00 p.m., Mr. Bailey again interjected that
"that would mean [they] wouldn't be able to settle" because of the "uncertainty." Judge
Williams ended the call by once again stating she would see them all at 2:00 p.m.

When court reconvened at 2:00 p.m., Judge Williams declared Mr. Bailey to be in
"criminal contempt" for his remarks,[3] explaining that the "dignity of the court was challenged

_____

[2] Judge Williams initially declined to accept their call and requested that they call back with a court
reporter on the line, which they did.

[3] At this time, Judge Williams stated that she had spoken with an attorney about becoming a special
prosecutor, said she had discussed with another trial judge the possibility of appointing a judge from outside
the county, and told Mr. Bailey that a "charging document" "[would] be served on" him detailing the time
and place of his contempt hearing. However, after consulting with a prominent local attorney and member
of the defense bar who had an adversarial history with Mr. Bailey, Judge Williams decided that no special

in such a way this morning that cannot be overlooked." On the afternoon of April 2, 2008, Judge Williams presided over a contempt hearing for Mr. Bailey, after which she found him guilty of criminal contempt, fined him $50.00, and sentenced him to ten days in jail, with nine days to be suspended if he would take part in the Tennessee Lawyer Assistance Program.[4]

On April 4, 2008, Judge Karen Williams and Mr. Chase both sent letters to the Board, reporting Mr. Bailey's conduct during the Watkins trial. On August 22, 2008, the Board filed a Petition for Discipline against Mr. Bailey.[5]

*B. The Proof Presented to the Hearing Panel*

At the July 23, 2012 hearing, four witnesses, including Judge Williams and Mr. Bailey, testified regarding Mr. Bailey's behavior during the Watkins trial.[6] Ms. Amy Mitchell, Judge Williams's court clerk, witnessed Mr. Bailey's behavior on March 27, 2008, and recalled that although "initially he was normal," "as he progressed it got worse." While usually she "enjoy[ed] Mr. Bailey coming to the courtroom[,]" that day was different because "he turned towards the Court." "He just got . . . very disrespectful" and became "very red

---

prosecutor, outside judge, or charging document was necessary in Mr. Bailey's contempt proceeding.

[4] Mr. Bailey appealed Judge Williams's finding of criminal contempt to the Court of Appeals. The Court of Appeals vacated the trial court's order and remanded the matter to the trial court for a hearing before a new judge. Watkins v. Methodist Healthcare Sys., No. W2008-01349-COA-R3-CV, 2009 WL 1328898, at *1 (Tenn. Ct. App. May 13, 2009). While expressing "amazement" that Mr. Bailey was willing to settle the underlying case so quickly if the issues affecting him were dropped, the Court of Appeals also held that "the imposition of summary contempt was not appropriate in this case where a hearing was scheduled and held some six days after the alleged acts of contempt occurred." Id. at *6, *7. The intermediate appellate court also found that the trial judge should have recused herself under the circumstances, given that the issues included acts of "personal attack or disrespect of the trial judge." Id. at *8.

Following the remand, the criminal contempt case against Mr. Bailey was ultimately dismissed as a consequence of delays that resulted in the violation of Mr. Bailey's right to a speedy trial. Watkins v. Bailey, 484 F.App'x. 18, 22 n.2 (6th Cir. 2012); In re Bailey, No. W2011-00330-COA-R3-CV, 2012 WL 361961, at *1 (Tenn. Ct. App. Feb. 3, 2012);.

[5] On April 27, 2009, the Board filed a Supplemental Petition for Discipline on the grounds that Mr. Bailey had improperly held himself out as a Civil Trial Specialist certified by the Tennessee Commission on Continuing Legal Education and Specialization and therefore violated Rules of Professional Conduct 7.1(a), 7.4(b) and (d), and 7.5(a). However, the Hearing Panel found that Mr. Bailey had not violated any of these rules, and that finding is not at issue in this appeal.

[6] The four-year delay between the filing of the petition and the hearing was due in part to the fact that the Board stayed the matter pending the resolution of Mr. Bailey's criminal contempt case.

-6-

in the face and was using his hand gestures." She testified that when Mr. Bailey "kept on and kept on attacking" Judge Williams, she became so disturbed that she asked the deputy to go up and talk to Judge Williams, who then called a recess. Mr. Loys A. "Trey" Jordan, another attorney present in the courtroom that day, testified by deposition that Mr. Bailey became more "frenetic" in his arguments, using a "snarky" and "harsh" tone to make statements that Mr. Jordan "would not make" to the trial court. He described Judge Williams's reaction to Mr. Bailey as "stoic," noting that she "basically had very little reaction."

Judge Williams stated in her deposition that Mr. Bailey's behavior throughout the trial was "very aggressive" and "inappropriate," noting that "[h]e would get angry, raise his voice," and repeatedly create problems in the courtroom. In her testimony before the Hearing Panel Judge Williams agreed that she did not rein in the attorneys as much as she should have, stating: "I should have gaveled these guys down much earlier." She stated that she had declared the mistrial because she believed there would otherwise be "grounds for appeal of judicial unfairness. After all that was said, I didn't think anybody would believe a judge could be fair."

Mr. Bailey testified that he did not mean to be disrespectful but that he was helping Judge Williams to make correct rulings, even if it meant that he had to "push and push and push" her in order to do so. He claimed that he and his co-counsel "found that the more forceful that [they] were with her the more effective it was." He stated that the way he spoke to Judge Williams that morning was "no different than [the way he] had talked to [Judge Williams] a hundred times," although he agreed that he talked to her in a "more assertive tone" than he would use with another judge. Before the Hearing Panel Mr. Bailey persisted in criticizing Judge Williams's "inconsistency," contending that she did not enforce her own ruling on speaking objections. He acknowledged that he characterized Judge Williams's rulings as "crazy," but Mr. Bailey seemed not to consider this comment to be inappropriate, justifying his conduct by citing his need to protect his minor client. He also described the Board's proceedings as "nonsense."

*C. The Hearing Panel's Findings*

In its final decision, issued December 4, 2012, the Hearing Panel determined that Mr. Bailey had violated Rules of Professional Conduct 3.4(c);[7] 3.5(e);[8] and 8.4(a) and (d).[9] Tenn. Sup. Ct. Rule 8. Specifically, the Hearing Panel observed that no matter "how worthy or vulnerable the attorney's client may be, or how poorly the [j]udge may be performing, or how difficult or unethical the adversary counsel may be," an attorney cannot justify "making rude, insulting, disrespectful and demeaning statements to the [j]udge during open [c]ourt." The Panel noted that even when testifying in his disciplinary hearing, Mr. Bailey continued to insult Judge Williams and justify his conduct. The Panel concluded that Mr. Bailey made abusive and critical comments to the judge in order to obtain favorable rulings from her and in doing so insulted the integrity of the trial [c]ourt.[10]

Having determined that disciplinary violations had occurred, the Hearing Panel then applied the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"). It first determined that ABA Standards 6.22 and 7.2,[11] which state the criteria for suspension, were applicable. The Hearing Panel then found that Mr. Bailey's testimony indicated that his statements were intentional, that he showed little respect for the trial court

---

[7] Rule 3.4(c) addresses "Fairness to Opposing Party and Counsel," and provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists[.]"

[8] Rule 3.5(e) addresses "Impartiality and Decorum of the Tribunal," and provides that "[a] lawyer shall not . . . engage in conduct intended to disrupt a tribunal."

[9] Rules 8.4 addresses "Misconduct" and provides in pertinent part as follows:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . . .

(d) engage in conduct that is prejudicial to the administration of justice[.]

[10] Mr. Bailey had initially been charged with violating Rules 3.1, 3.2, 3.3(a)(1), 3.4(c), 3.5(e), 7.1(a), 7.4(b) and (d), 7.5(a), 8.2(a)(1), and 8.4(a), (b), (c), and (d). As a preliminary matter, the parties stipulated that Mr. Bailey had not violated Rule 8.4(b).

[11] Although the Final Decision of the Hearing Panel cites ABA Standard 7.1, the correct ABA Standard is 7.2.

or its rulings, and that he expressed no remorse for his conduct. It found that Mr. Bailey's conduct was "disruptive" and unacceptable trial advocacy that caused "actual injury to the legal system and profession." It also found that Mr. Bailey had a prior history of discipline, having received a private informal admonition from the Board on August 21, 1990.[12] The Hearing Panel thus found five aggravating factors:

1. [Mr.] Bailey has substantial experience in the practice of law.
2. [Mr.] Bailey has demonstrated a pattern of misconduct.
3. [Mr.] Bailey has a prior disciplinary sanction.
4. There are multiple offenses in that [Mr.] Bailey has violated several Rules of Professional Conduct.
5. [Mr.] Bailey has refused to acknowledge the wrongful nature of his misconduct.

After assessing these factors and its findings, the Hearing Panel unanimously found that Mr. Bailey should be suspended from the practice of law for sixty days.

Mr. Bailey filed a petition for writ of certiorari in the Chancery Court for Shelby County seeking review of the judgment of the Hearing Panel pursuant to Tennessee Supreme Court Rule 9. Tenn. Sup. Ct. R. 9, § 1.3.[13] Mr. Bailey and the Board subsequently entered into an agreed order to stay the Hearing Panel's decision pending appeal. Senior Judge Paul G. Summers, who was appointed to preside over the proceedings, affirmed the Hearing Panel's conclusion that Mr. Bailey had violated Rules of Professional Conduct 3.4(c), 3.5(e), and 8.4(a) and (d) but reduced the sanction from a sixty-day suspension to a public censure. The Board subsequently appealed the Chancery Court's judgment to this Court. See Tenn Sup. Ct. R. 9, § 1.3.

## II. Standard of Review

As part of this Court's duty to regulate the practice of law in Tennessee, this Court is ultimately responsible for the process of disciplining and sanctioning attorneys who violate the ethical rules governing the legal profession. Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 267 (Tenn. 2012). Pursuant to Tennessee Supreme Court Rule 9, section 8.2, attorneys charged with disciplinary violations have a right to an evidentiary hearing before

---

[12] This admonition occurred when Mr. Bailey self-reported an incident in which an assistant mistakenly removed funds from his firm's escrow account—funds he immediately replaced upon discovering what had occurred.

[13] Because this case was initiated prior to January 1, 2014, it is governed by the pre-2014 version of Tennessee Supreme Court Rule 9. We note, however, that the relevant provisions of the pre-2014 version of Rule 9 do not differ from the current version of Rule 9.

a hearing panel, which determines if a violation has occurred and, if so, the disciplinary penalty. Maddux v. Bd. of Prof'l Responsibility, 409 S.W.3d 613, 621 (Tenn. 2013). Either party may appeal a hearing panel's decision to the circuit or chancery court, and then may appeal from the trial court's decision directly to this Court. Tenn. Sup. Ct. R. 9, § 1.3. Our review is conducted upon "the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing panel." Id.

We apply the same standard of review as applied by the trial court and do not disturb the hearing panel's decision unless the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction, (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Id.; Moncier v. Bd. of Prof'l Responsibility, 406 S.W.3d 139, 150 (Tenn. 2013). We review questions of law de novo but do not substitute our judgment for that of the hearing panel as to the weight of the evidence on questions of fact. Tenn. Sup. Ct. R. 9, § 1.3; Maddux, 409 S.W.3d at 622.

### III. Analysis

The Board argues that the Chancery Court properly affirmed the Hearing Panel's finding that Mr. Bailey violated Rules of Professional Conduct 3.4(c), 3.5(e), and 8.4(a) and (d), and Mr. Bailey does not take issue with this finding, or the assessment of a public censure. However, the Board contends that Chancery Court erred by holding that: (1) the Hearing Panel's application of ABA Standards 6.22 and 7.2 was arbitrary and capricious; (2) the Hearing Panel's assessment of aggravating and mitigating factors was arbitrary and capricious; and (3) the imposition of a sixty-day suspension was arbitrary, capricious, and characterized by an abuse of discretion in light of comparative discipline. Mr. Bailey responds that the trial court correctly determined these three issues.

### A. Application of ABA Standards

In order to determine the appropriate discipline in a given case, we turn to the ABA Standards for Imposing Lawyer Sanctions. See Tenn. Sup. Ct. R. 9, § 8.4; Maddux, 409 S.W.3d at 624. These standards are "guideposts" rather than rigid rules for determining appropriate and consistent sanctions for attorney misconduct. Maddux, 409 S.W.3d at 624.

The ABA Standards provide a framework that gives "courts the flexibility to select the appropriate sanction in each particular case of lawyer misconduct.'" Id. (quoting ABA Standards, Theoretical Framework). The ABA Standards specify that when imposing a sanction, the court should consider:

(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?);
(2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?);
(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?); and
(4) Are there any aggravating or mitigating circumstances?

Id. (quoting ABA Standards, Theoretical Framework). These inquiries aid in shaping our discussion as we address the issues raised by the parties.

The Hearing Panel found that Mr. Bailey knowingly disobeyed a court order, and that Mr. Bailey's behavior was "disruptive and caused actual injury to the legal system and profession," therefore warranting suspension under the ABA Standards. Under ABA Standard 6.22, "[s]uspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a party, or causes interference or potential interference with a legal proceeding." ABA Standard 6.22. According to the ABA Standards, "knowledge" is "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards, Black Letter Rules, Definitions. "Injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." Id. "'Potential injury' is the harm to a client, the public, the legal system or the profession that is foreseeable at the time of the lawyer's misconduct, and which, but for some intervening event, would probably have resulted from the lawyer's misconduct." Id.

Addressing the initial requirements of Standard 6.22, the Board argues that Mr. Bailey "knowingly" "violated a court order or rule" when he continued to make speaking objections after being instructed not to, and when his behavior escalated into a series of insulting and demeaning statements to the court. Mr. Bailey counters that Judge Williams did not enforce her ruling regarding speaking objections and even encouraged him to speak up as necessary, and therefore no court rule was broken.

The proof in this record establishes that Judge Williams did instruct both attorneys to avoid making speaking objections, ordering them to "stand up, say I object, and sit down.

-11-

Do not interrupt each other." During Mr. Bailey's opening statement, defense counsel asked to approach the bench four times to make an objection and thus avoided making speaking objections within the jury's hearing. During Mr. Shannon's opening statement, however, Mr. Bailey made twelve speaking objections, often before the jury, and he continued to object even after Judge Williams instructed him to let Mr. Shannon finish his opening statement uninterrupted. Mr. Bailey also testified that his statements to the court were intentional, albeit made in the interest of representing his client. The evidence therefore supports the Hearing Panel's finding that Mr. Bailey knowingly disobeyed a court order.

The Board also argues that Mr. Bailey's conduct caused "interference or potential interference with a legal proceeding" insofar as his disruptive behavior violated his professional duty to refrain from abusive conduct and resulted in interference with a legal proceeding. Namely, his behavior resulted in Judge Williams's declaration of a mistrial in Watkins. The Board also argues that his behavior resulted in "actual injury" or "potential injury" to his own client, Ms. Watkins, who might have been damaged by the mistrial, although ultimately she was able to settle the case. Mr. Bailey argues that his comments were all made in furtherance of legal arguments, and thus were not disruptive to the legal process but rather a necessary means of partaking in it. Moreover, he argues that the granting of a mistrial was improper and unforeseeable because the pertinent comments took place outside the presence of the jury.[14] Finally, he argues that his client suffered no injury, as his efforts were all attempts to zealously represent her and she ultimately received a favorable settlement.

Like the Hearing Panel, we quote from Comment 5 to Rule of Professional Conduct 3.5, which directly addresses the duty of lawyers to behave in a manner conducive to creating a civil courtroom atmosphere, even in difficult circumstances.

> The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge, but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review, and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.

---

[14] As a result of the mistrial, Ms. Regina Watkins brought a malpractice suit against Mr. Bailey, which was ultimately dismissed on summary judgment by the trial court. The trial court's ruling was later affirmed by the Sixth Circuit, which noted that "although Mr. Bailey's behavior warranted some form of punishment, the declaration of a mistrial was unnecessary." Watkins v. Bailey, 484 F. App'x at 22 n.2.

Rule 8, RPC 3.5, Comment 5. A court may sanction attorney speech and behavior precisely because the "integral role that attorneys play in the judicial system . . . requires them to refrain from speech or conduct that may obstruct the fair administration of justice." Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 550 (Tenn. 2004) (quoting Office of Disciplinary Counsel v. Gardner, 793 N.E.2d 425, 428-29 (Ohio 2003)). Attorneys have a duty to maintain a "respectful attitude" toward the court, and to refrain from "doing anything which will tend to destroy the confidence of the public in the courts." Ramsey v. Bd. of Prof'l Responsibility, 771 S.W.2d 116, 122 (Tenn. 1989) (quoting In re Hickey, 258 S.W. 417, 430 (Tenn. 1924)).

Specifically, a lawyer's duty to advocate zealously on behalf of his client is no excuse for unprofessional conduct that threatens to disrupt a courtroom, as "the idea that there is a conflict between zealous advocacy and ethical and professional behavior is completely false." In re Moncier, 550 F. Supp. 2d 768, 807 (E.D. Tenn. 2008). Even if an attorney believes that the court has issued an erroneous ruling, zealous representation of a client "'never justifies the use of disrespectful, unprofessional or indecorous language to the court.'" Id. (quoting Conklin v. Warrington Twp., No. 1:05-CV-1707, 2006 WL 2246415, at *2 (M.D. Pa. Aug. 4, 2006)). "When zealous advocacy degenerates into impertinent, scandalous, and insulting language, it is the court's duty to address squarely the offending conduct, and to tailor a sanction appropriate to the offense." Id. (quoting Conklin, 2006 WL 2246415, at *2).

Here, the proof supports the Hearing Panel's finding that Mr. Bailey's conduct caused interference or potential interference with a legal proceeding as well as actual or potential injury to the clients or parties. Mr. Bailey's twelve objections during opposing counsel's opening statement were extremely disruptive and in violation of Judge William's express order that there be no speaking objections. Most significantly, however, directly before and after Mr. Shannon's opening statement, Mr. Bailey badgered and insulted Judge Williams. Among other abusive statements, he called her rulings "bizarre" and "crazy"; claimed that she "almost always" got the law "wrong" in her rulings; accused her of setting a "world record for reversible error"; ridiculed the "salmon-colored card" she used to cite attorneys for contempt; and described her as indifferent to whether a lawyer was "lying to [her]." Indeed, even Mr. Bailey's later testimony was markedly disrespectful toward Judge Williams as well as the Hearing Panel itself, insofar as he continued to describe her rulings as "crazy" and the disciplinary hearing as "nonsense."

The effects of Mr. Bailey's behavior are also clear. Mr. Bailey's outbursts on the morning of March 27th were so outrageous that they caused opposing counsel to move for a mistrial. Judge Williams shortly thereafter granted a mistrial, citing Mr. Bailey's "contentious conduct." As a result of the mistrial, Mr. Bailey decided to settle the case, and

his client ultimately accepted a settlement offer slightly lower than the offer the defense made just before trial began.

We agree with the Board that the Chancery Court erred in holding that the Hearing Panel's decision to apply ABA Standard 6.22 was arbitrary and capricious and conclude that the Chancery Court improperly substituted its judgment for that of the Hearing Panel regarding the weight of the evidence. Substantial and material evidence supports the Hearing Panel's finding that Mr. Bailey's behavior warranted suspension pursuant to ABA Standard 6.22.

However, we agree with Mr. Bailey that the Chancery Court correctly determined that the Hearing Panel should not have applied ABA Standard 7.2 to his case. Upon reading Standard 7.2 in context, we agree that it falls under section 7.0 and thus applies only to cases involving "false and misleading communications about the lawyer or the lawyer's services," as well as violations of rules regarding client solicitation and representation, improper fees, the unauthorized practice of law, or a failure to report misconduct. ABA Standards 7.0. Once the Hearing Panel determined that Mr. Bailey was not to be sanctioned for violating any such rules, the discipline described by ABA Standard 7.2 did not apply. See Hyman v. Bd. of Prof'l Responsibility, No. E2012-02091-SC-R3-BP, 2014 WL 1280265, at *10 (Tenn. Mar. 31, 2014) (finding sanctions set forth in ABA Standard 7.2 to be inapplicable where the party was not alleged to have committed violations described in ABA Standard 7.0).[15]

### B. The Assessment of Aggravating and Mitigating Factors

After properly identifying the "presumptively appropriate sanction applicable to the established misconduct"—in Mr. Bailey's case suspension pursuant to ABA Standard 6.22—the next task is to "consider whether that sanction should be increased or decreased due to aggravating and mitigating circumstances, if any." Cowan, 388 S.W.3d at 268. Greater or lesser sanctions may be appropriate depending on whether or not aggravating or mitigating factors exist. ABA Standards 9.1, 9.2, 9.3. We have held that the factors enumerated in ABA Standard 9 are "illustrative rather than exclusive," and that "any considerations or factors" justifying an increase or decrease in the sanction may be

---

[15] Although it relied exclusively on ABA Standards 6.22 and 7.2 when determining the appropriate sanction to impose in Mr. Bailey's case, the Hearing Panel also could have relied on ABA Standard 6.32, based on Mr. Bailey's violation of Rule of Professional Conduct 3.5(e). See ABA Standards app. 1 (stating that violations of Rule 3.5 trigger the presumptive sanctions of Standard 6.3). However, because we have concluded that the Hearing Panel's application of ABA Standard 6.22 is supported by substantial and material evidence, the Hearing Panel's failure to cite ABA Standard 6.32 does not entitle Mr. Bailey to relief. See Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 28 (Tenn. 2012) ("A hearing panel does not abuse its discretion when it makes a choice among several acceptable alternatives.").

considered, <u>Lockett</u>, 380 S.W.3d 19, 28 (Tenn. 2012) (internal quotation marks omitted) (citing ABA Standards 9.21, 9.22).

The Hearing Panel found no mitigating factors and five aggravating factors, the latter including Mr. Bailey's substantial experience in the practice of law, his demonstrated pattern of misconduct, his prior disciplinary sanction, the fact that he committed multiple offenses in violating several Rules of Professional Conduct, and his refusal to acknowledge the wrongful nature of his misconduct. The Chancery Court found that the Hearing Panel abused its discretion in this finding, and instead cited the remoteness and inadvertent nature of the infraction that gave rise to the prior discipline, as well as the unselfish motivations for Mr. Bailey's behavior, both of which the Chancery Court found should mitigate Mr. Bailey's sanction, in light of the highly combative atmosphere of the <u>Watkins</u> courtroom.

The Board argues that the Hearing Panel properly weighed the aggravating and mitigating factors and that the Chancery Court erred by holding that the Hearing Panel's assessment of these factors was arbitrary and capricious. Although the Board concedes that Mr. Bailey's motivations were unselfish and that his prior disciplinary sanction occurred over twenty years ago, it also argues that, even after taking into account the unusually vituperative nature of the <u>Watkins</u> case, the aggravating factors outweigh any mitigating factors in Mr. Bailey's case and justify the Hearing Panel's imposition of a sixty-day suspension. Mr. Bailey argues that the Chancery Court properly weighed the mitigating factors to find that a public censure would be more appropriate.

After reviewing the record, we find that the Hearing Panel properly considered the pertinent aggravating and mitigating factors in recommending a sixty-day suspension, and that its judgment was supported by substantial and material evidence and thus was neither arbitrary nor capricious. Even if Mr. Bailey's prior disciplinary sanction was remote and non-serious, and even if Mr. Bailey believed himself to be acting in the best interest of his client in a difficult situation, these factors as cited by the Chancery Court are not determinative in this case. The Hearing Panel properly found the proof to demonstrate that: (1) Mr. Bailey is an attorney with many years of courtroom experience; (2) he engaged in a pattern of misconduct during the course of the <u>Watkins</u> trial; (3) he violated several rules of professional conduct in doing so; and 4) he showed a lack of remorse for his behavior. We agree that these factors weighed in favor of imposing a suspension. Like the Hearing Panel, we find Mr. Bailey's lack of remorse and his persistence in exhibiting disrespect to the trial court and the Hearing Panel especially troubling, and we cannot agree with his perspective that there are effectively few limits on an attorney's conduct, as long as his motives are pure.

*C. The Imposition of a Sixty-Day Suspension*

The Board argues that the Hearing Panel's imposition of a sixty-day suspension is appropriate and supported by existing Tennessee case law. Mr. Bailey argues that the Chancery Court properly found that the Hearing Panel's imposition of a sixty-day suspension resulted in prejudice to Mr. Bailey and was arbitrary and capricious when compared with other decisions in which this Court determined suspension to be appropriate.

This Court "evaluate[s] each instance of attorney discipline in light of its particular facts and circumstances," even as it "consider[s] the sanctions that have been imposed in prior cases that present similar circumstances so as to maintain consistency and uniformity in disciplinary proceedings." Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 40 (Tenn. 2004).

Other Tennessee cases involving attorneys who engaged in disrespectful and abusive behavior in the courtroom or in pleadings addressed to the Court prove instructive. In Ramsey, 771 S.W.2d at 122-123, a district attorney failed to obey court orders, refused to answer a judge's questions, and engaged in inappropriate conduct in the courtroom, slamming a door noisily on his way out. This Court determined that the attorney's misconduct warranted a 180-day suspension—with 135 days probated and the remaining forty-five days served on active suspension, with the proviso that he would be required to serve the entire suspension should he again violate any Rules of Professional Conduct or be found in contempt of court. Id. at 123. In Farmer v. Board of Professional Responsibility, 660 S.W.2d 490, 491 (Tenn. 1983), an attorney was suspended for sixty days for using "scurrilous and improper" language in briefs to the court and for accusing fellow attorneys and the court of telling lies. He was suspended despite his claims that he felt that he "had to resort to—or [he] was justified in resorting to stronger tactics, more positive language to get the attention of the [c]ourt." Id. at 492. Another attorney who filed frivolous pleadings, described a judge in pleadings as "[p]etty, barbarous and cruel" and a "retaliator" who "disgraces his judicial office," and engaged in other inappropriate behavior that resulted in one federal judge barring him from her courtroom had his license suspended by this Court for two years. Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 543, 551 (Tenn. 2004).

Like the attorney in Farmer, Mr. Bailey was abusive to the court, speaking disrespectfully, disobeying an instruction to avoid speaking objections, inappropriately implying that Judge Williams tolerated lying in her courtroom, and accusing defense counsel of telling lies. Again, like Mr. Farmer, Mr. Bailey felt that he had to "push and push" to get the rulings he wanted from Judge Williams, stating that he and co-counsel had "found that the more forceful that we were with her the more effective it was." Additionally, like Mr.

-16-

Slavin, Mr. Bailey accused a judge of incompetence, although his conduct lacked the intensity or personal vitriol, as well as the cumulative instances of unprofessional behavior, present in Mr. Slavin's case.

In finding the imposition of the sixty-day suspension to be an abuse of the Hearing Panel's discretion, the Chancery Court cited Maddux, 148 S.W.3d at 38, in which an attorney received a thirty-day suspension for converting over $90,000 in funds from his partnership. In Maddux, however, the attorney was remorseful, admitted his wrongdoing, and cooperated with the disciplinary proceedings. Id. at 39. Most significantly, however, Maddux involved an unusual set of circumstances, including the attorney living with the threat of discipline for ten years because Disciplinary Counsel waited for four and a half years after the initial complaint was filed to file his petition for discipline. Id. at 40. In contrast to Maddux, Mr. Bailey appeared unremorseful and disdainful in his testimony before the Hearing Panel, still convinced that his behavior was justified by his need to represent his client and persisting in characterizing the trial court's rulings as "crazy" and inconsistent.

Given these precedents, we conclude that Mr. Bailey's sixty-day suspension is consistent with comparable Tennessee cases involving similar violations of the Rules of Professional Conduct and that the length of the suspension is appropriately tailored to the facts of Mr. Bailey's circumstances. Indeed, the Hearing Panel imposed only a sixty-day suspension, although the ABA Standards state that a suspension generally should be for no less than six months. We wholeheartedly agree with the Hearing Panel's conclusion that "simply abusing or insulting the [c]ourt to get rulings in [favor of a client] cannot ever be endorsed or justified by our rules and our system of professional conduct." Indeed, it is especially important that attorneys, who play an integral role in the judicial system, "respect the line separating, in the judicial context, tolerable criticism from unacceptable speech." Slavin, 145 S.W.3d at 551. Attorneys who cross this line may not avoid punishment by claiming that their misconduct served the greater good or the interests of their clients, as such exceptions would overwhelm the rules.

### IV. Conclusion

The judgment of the Hearing Panel was supported in all respects by substantial and material evidence and was therefore neither arbitrary nor capricious. Accordingly, we reverse that portion of the judgment of the Chancery Court which reduced Mr. Bailey's sanction and reinstate the Hearing Panel's imposition of a sixty-day suspension of Mr. Bailey's law license. Costs of this appeal are taxed to Mr. Bailey, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

-17-