## IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 7, 2018 Session

## GERALD STANLEY GREEN v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-17-0341     William B. Acree, Senior Judge**

_____

**No. W2017-02358-SC-R3-BP**
_____

This direct appeal involves a lawyer disciplinary proceeding against a Memphis attorney arising from two client complaints and the lawyer's failure to satisfy fully Mississippi's requirements for pro hac vice admission before representing a criminal defendant in Mississippi. A Hearing Panel of the Board of Professional Responsibility ("Hearing Panel") determined that the lawyer had violated four provisions of the Tennessee Rules of Professional Conduct ("RPC"). After consulting the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") and considering the mitigating and aggravating circumstances, including the lawyer's seventeen prior disciplinary sanctions, the Hearing Panel suspended the lawyer for six months and directed thirty days of the sanction to be served on active suspension with the remainder to be served on probation with conditions, including a practice monitor, restitution, and continuing legal education focused on law office management, client communication, and client relations. The lawyer appealed the Hearing Panel's judgment, and the Chancery Court for Shelby County affirmed. The lawyer then appealed to this Court. After carefully reviewing the record, we affirm.

**Tenn. Sup. Ct. R. 9, § 1.3 (2006) (currently Tenn. Sup. Ct. R. 9, § 33.1(d) (2018))**
**Direct Appeal; Judgment of the Trial Court Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Gerald Stanley Green, Memphis, Tennessee, appellant, pro se.

Alan D. Johnson, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

# OPINION

## I. Factual and Procedural Background

Gerald Stanley Green obtained his license to practice law in Tennessee in 1981. Mr. Green's disciplinary record as a practicing attorney has been far from unblemished. Before the present disciplinary proceeding, Mr. Green had received the following seventeen disciplinary sanctions:

- Public Censure – February 27, 2015 (competence, diligence)

- Private Informal Admonition – June 29, 2006 (competence, diligence, misconduct)

- Private Informal Admonition – March 15, 2005 (neglect, communication)

- Private Informal Admonition – May 3, 2004 (neglect, communication)

- Six-Month Suspension (all probated) – May 3, 2004 (neglect, fees, failed to withdraw and return property, competence, neglect, communication)

- Private Informal Admonition – August 3, 2000 (neglect, communication)

- Public Censure – November 19, 1999 (late-filed appellate brief, neglect, communication, scope of representation)

- Private Informal Admonition – November 16, 1999 (communication, safekeeping property and funds)

- Private Reprimand – October 1, 1998 (delayed filing petition for bankruptcy)

- Private Informal Admonition – February 28, 1997 (failed to pay a medical lien or prepare a written settlement statement)

- Private Informal Admonition – October 1, 1996 (neglect, communication)

- Private Informal Admonition – August 5, 1996 (neglect, communication)

- Public Censure – May 24, 1995 (neglect, communication, misleading court)

- Private Informal Admonition – November 10, 1994 (neglect, communication)

- Private Informal Admonition – July 25, 1994 (neglect, communication)

- Private Reprimand – April 28, 1993 (fees, competence, neglect, communication)

- Informal Admonition – September 28, 1990 (neglect, communication)

Many of these prior sanctions were imposed by agreement and resolved multiple client complaints against Mr. Green for conduct similar to that at issue in this proceeding. For example, the six-month fully probated suspension resolved eight complaints by at least seven different clients and concerned Mr. Green's failure to communicate appropriately with his clients.

This present appeal also stems from multiple complaints against Mr. Green. Disciplinary counsel for the Board of Professional Responsibility ("Board") filed an initial petition for discipline on April 15, 2015, which included complaints from two of Mr. Green's former clients and the Board's complaint regarding Mr. Green's representation of a criminal defendant in Mississippi without complying with the Mississippi rule governing pro hac vice admission. Mr. Green responded to this initial petition in May 2015, and then, on October 23, 2015, Mr. Green submitted a conditional guilty plea. The conditional guilty plea included the sanction of public censure. The Hearing Panel and the Board approved the conditional guilty plea; however, on January 20, 2016, this Court rejected it "based on concerns about Mr. Green's lengthy prior disciplinary record" and returned the matter to the Board for further proceedings.

On March 22, 2016, the Board filed a supplemental petition against Mr. Green based on a third client complaint. The October 6, 2016 disciplinary hearing proceeded on both the initial and the supplemental petitions for discipline. Mr. Green and the Board presented a joint written stipulation of facts. Additionally, Mr. Green, two of the complaining former clients, Johnny Kizer and Augusta McKinney, and attorney George Higgs, testified at the hearing. Several exhibits also were introduced. A summary of the proof pertinent to each complaint appears below.[1]

---

[1] The Hearing Panel found the proof related to one of the client complaints insufficient to establish any disciplinary violation, so the proof related to that complaint is not summarized herein.

## A. Johnny Kizer Complaint

Prior to October 2012, Mr. Kizer hired Roto-Rooter to perform plumbing work at his home. He obtained a loan from Springleaf Financial Services ("Springleaf") to pay for the work. Springleaf regularly financed loans for Roto-Rooter customers, but Springleaf and Roto-Rooter were separate entities.[2] Mr. Kizer was dissatisfied with Roto-Rooter's work and, as a result, refused to repay the loan to Springleaf. On October 23, 2012, Springleaf sued Mr. Kizer in General Sessions Court in Shelby County for non-payment of a debt. Mr. Kizer hired Mr. Green to represent him and paid Mr. Green $750. When the case was called in General Sessions Court, Mr. Green announced that the parties had resolved the matter to their mutual satisfaction, and the General Sessions Judge entered an agreed order against Mr. Kizer. Mr. Kizer authorized this resolution of the matter, and Mr. Green believed the case had concluded and his representation had ended.

Apparently, Mr. Kizer subsequently changed his mind about the agreement because he filed pro se an appeal to the Circuit Court for Shelby County ("Circuit Court"). Mr. Kizer did not consult Mr. Green about the appeal, but he identified Mr. Green as his counsel of record on the notice of appeal. Mr. Green first learned of Mr. Kizer's appeal from a letter the Circuit Court Clerk's office sent him. He contacted Mr. Kizer, and at Mr. Kizer's request, Mr. Green agreed to represent Mr. Kizer on the matter in Circuit Court for an additional $250 fee.[3]

Before the case was heard in Circuit Court, Mr. Green attempted to resolve Mr. Kizer's dissatisfaction with Roto-Rooter's work. Mr. Green sent a plumber to Mr. Kizer's home to inspect Roto-Rooter's work at no expense to Mr. Kizer. Mr. Green, in conjunction with Mr. Higgs, the lawyer who represented Springleaf, convinced Roto-Rooter to extend the already expired warranty on its work. Mr. Green also convinced Roto-Rooter to return to Mr. Kizer's home and inspect the work to determine if Roto-Rooter had performed the plumbing work in a defective manner that caused Mr. Kizer's plumbing problems. However, when Roto-Rooter representatives arrived and retrieved equipment from their vehicle to inspect the work, Mr. Kizer asked them to leave his property unless they intended to change the pipes.

---

[2] From the testimony of attorney George Higgs, who represented Springleaf in the action against Mr. Kizer, it appears Springleaf acquired Mr. Kizer's loan from Roto-Rooter either by transfer or purchase through an assignment. The contract that created Mr. Kizer's indebtedness to Springleaf was not introduced as an exhibit at the disciplinary hearing, although the proof indicates it was a non-recourse loan.

[3] Mr. Kizer never paid Mr. Green this additional fee.

Meanwhile, Mr. Kizer remained convinced that he had no obligation to pay Springleaf because of his dissatisfaction with Roto-Rooter's work. Mr. Green acknowledged that in Mr. Kizer's mind, Springleaf and Roto-Rooter were the same entity. This belief is evidenced by Mr. Kizer's April 1, 2014 letter to Mr. Green expressing his "wish to move forward with the case against Roto-Rooter" and stating, "Time is of the essence and I don't want any delays on my behalf." Mr. Kizer also advised Mr. Green that the Shelby County Code Enforcement had inspected his property and had given him twenty-four hours to correct his plumbing problems, which included raw sewage flowing beneath his house, and also had confirmed that no plumbing permit had been pulled for his property since 2011.

On August 29, 2014, Mr. Kizer visited Mr. Green's office and delivered a packet of information, including the paperwork from the Shelby County Code Enforcement, photographs of what Mr. Kizer alleged was Roto-Rooter's faulty work and the conditions beneath his home, and contact information for the plumber Mr. Green had hired to inspect Roto-Rooter's work. Mr. Green acknowledged this visit by sending Mr. Kizer a letter, dated September 1, 2014, thanking Mr. Kizer for visiting his office on August 29, 2014, "to bring documents evidencing the plumbing work required to be done because of the unworkmanlike job performance of Roto-Rooter."

At the disciplinary hearing, Mr. Kizer explained that he expected Mr. Green to introduce proof of Roto-Rooter's deficient work at the trial of the Springleaf lawsuit. Mr. Higgs, who represented Springleaf, also testified at the disciplinary hearing that he too had anticipated that Mr. Green would introduce proof of this sort. Mr. Higgs stated that he had not so much focused on the legal argument that Mr. Kizer owed Springleaf, regardless of the quality of Roto-Rooter's work, but had focused on the question of whether the work had actually been performed properly. Mr. Higgs had subpoenaed a representative of Roto-Rooter to testify in Circuit Court about the work Roto-Rooter performed at Mr. Kizer's home. Mr. Higgs believed that the Circuit Court might have been swayed by an argument that Roto-Rooter's work was sub-par.

Nevertheless, at the trial of the Springleaf lawsuit on September 15, 2014, Mr. Green called only Mr. Kizer as a witness and presented no other proof. In his testimony, Mr. Kizer reiterated his position that Roto-Rooter's poor workmanship relieved him of any obligation to repay Springleaf. The Circuit Court entered a judgment in favor of Springleaf.

Mr. Green testified at the disciplinary hearing that he had never intended to introduce proof about Roto-Rooter's alleged poor workmanship and did not believe it was relevant to the Springleaf collection lawsuit. Mr. Green also stated, however, that the issue of Roto-Rooter's workmanship would have been relevant to show that Springleaf financed a bad job. Mr. Green testified that he told Mr. Kizer if he could show

that Roto-Rooter's work was deficient, it would be a basis for bringing a valid lawsuit against Roto-Rooter but that, according to Mr. Green, Mr. Kizer did not want to pursue this option. Mr. Kizer disputed this testimony and claimed that Mr. Green did not tell him of the option of filing a lawsuit or a counterclaim against Roto-Rooter until after he had lost the Springleaf lawsuit in Circuit Court. According to Mr. Kizer, when he told Mr. Green he wanted to appeal, Mr. Green, for the first time, told him that the better option would be to file a lawsuit against Roto-Rooter.

Before the Hearing Panel, Mr. Kizer testified that Mr. Green should have presented evidence of Roto-Rooter's poor workmanship at the Circuit Court proceeding. Mr. Green, on the other hand, testified that he viewed the Circuit Court proceeding as a debt collection dispute between Mr. Kizer and Springleaf, not a lawsuit about Roto-Rooter's poor workmanship. Mr. Green reiterated that he had attempted to resolve Mr. Kizer's dissatisfaction with Roto-Rooter by obtaining an extension of the warranty on the work and by convincing representatives of Roto-Rooter to return and inspect their work. Mr. Green pointed out that Mr. Kizer had thwarted these efforts by refusing to allow the Roto-Rooter representatives onto his property.

The Hearing Panel found the proof sufficient to establish that Mr. Green had violated RPC 1.3, which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." The Hearing Panel also found the proof sufficient to establish that Mr. Green had violated RPC 1.4, which provides:

(a) A lawyer shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;
    (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
    (3) keep the client reasonably informed about the status of the matter;
    (4) promptly comply with reasonable requests for information; and
    (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The Hearing Panel found the proof insufficient to support the Board's allegations that Mr. Green had also violated RPC 1.1 (competence) and RPC 1.2 (scope of representation).

The Hearing Panel was "not critical" of Mr. Green's "legal analysis of the lawsuit" but expressed concern that Mr. Green "went to trial on this matter without adequately informing Mr. Kizer as to the issues he planned to address." In light of this lack of communication, the Hearing Panel described Mr. Kizer's belief that "his attorney would introduce evidence regarding the alleged poor workmanship of the Roto-Rooter plumbing job" as "certainly understandable." The Hearing Panel explained that "even though Mr. Green did diligently attempt to assist Mr. Kizer in getting Roto-Rooter to correct any improper plumbing work (if any improper plumbing work even existed) he failed to adequately explain to Mr. Kizer that none of that, in Mr. Green's opinion, had anything whatsoever to do with the collection matter." The Hearing Panel concluded that "Mr. Kizer had a right to know in advance of trial that his lawyer was not going to introduce any witnesses or evidence (other than the testimony of his own client), as well as the reason for that decision."

## B. Augusta McKinney Complaint

On September 19, 2014, Mr. McKinney filed pro se a civil warrant in the General Sessions Court of Shelby County against Kerwin Lockett seeking to recover possession of a preschool van he had purchased from a third person ("the Seller"). Mr. Lockett refused to relinquish possession of the van because the Seller had not paid him for work he had performed on the vehicle. When Mr. Lockett retained counsel and filed a counterclaim, Mr. McKinney, in turn, hired Mr. Green to represent him. Mr. McKinney wanted to proceed quickly to trial and became frustrated with Mr. Green after the case was continued several times.

An evidentiary hearing eventually commenced in General Sessions Court[4] but ended after a determination was made that the Seller was an indispensable party and needed to be brought into the lawsuit.[5] Mr. Green advised Mr. McKinney to sue the Seller, but Mr. McKinney refused, believing he had an absolute right to possession of the vehicle based on his purchase, independent of whether the Seller had paid Mr. Lockett for work done on the vehicle. Mr. McKinney testified at the disciplinary hearing that he had verbally fired Mr. Green the day this continuance was granted. Mr. Green, on the other

---

[4] The record does not indicate when this hearing occurred, and Mr. Green testified that he had no documentation of the date on his calendar or in his case file.

[5] It is not clear from the record whether this determination was made by the General Sessions Court Judge or counsel for the parties.

hand, acknowledged that Mr. McKinney had been very upset about the continuance, but he denied that Mr. McKinney verbally fired him.

For reasons that are not clear from the proof in the record on appeal, Mr. McKinney appeared alone in General Sessions Court on the lawsuit on February 18, 2015, with neither Mr. Green nor the attorney for Mr. Lockett present at this hearing. Mr. McKinney testified that, after he had waited for about an hour and a half, the General Sessions Judge asked him what relief he was seeking. Mr. McKinney responded that he was seeking only possession of the vehicle he had purchased. The General Sessions Judge then entered a judgment in Mr. McKinney's favor for possession of the van. Mr. McKinney did not inform Mr. Green or Mr. Lockett's attorney of the judgment. Instead he used the judgment to begin the process of obtaining possession of the van he had purchased.

Mr. Lockett's counsel first learned of the judgment against his client in March 2015, when Mr. McKinney attempted to execute a writ of possession on the van.[6] Counsel for Mr. Lockett then informed Mr. Green of the judgment and asked Mr. Green to meet him in court either later that same day or the next day—Mr. Green could not recall which—to set aside the judgment. Mr. Green had been unaware of the judgment until Mr. Lockett's attorney called, but he agreed to meet Mr. Lockett's attorney in court. Mr. Green did not contact Mr. McKinney before agreeing to the request, nor did he contact Mr. McKinney after agreeing to it. Mr. Green explained at the disciplinary hearing that he believed Mr. McKinney had obtained the judgment through fraudulent representations and believed that he had an obligation as an officer of the court to cooperate with opposing counsel to set aside what he viewed as an inappropriately obtained judgment. Mr. Green could not explain at the disciplinary hearing why he failed to speak with Mr. McKinney and learn how the judgment had been obtained before agreeing to opposing counsel's request. He also could not explain why he failed to advise Mr. McKinney of the hearing after he had agreed to the request.

Nonetheless, Mr. Green testified at the disciplinary hearing that, when counsel appeared together before the General Sessions Court Judge, Mr. Lockett's counsel asked for the judgment to be set aside and he (Mr. Green) did not oppose that request. Even after the judgment was set aside, Mr. Green still failed to contact Mr. McKinney and advise him of the status of the lawsuit. Mr. McKinney first learned the judgment had been set aside from someone in the court clerk's office. Mr. McKinney testified at the disciplinary hearing that he had attended many of the earlier court proceedings and would certainly have attended the proceeding at which the judgment was set aside had he known of it.

---

[6] Counsel for Mr. Lockett did not testify at the disciplinary hearing.

After learning the judgment had been set aside, Mr. McKinney wrote Mr. Green a letter dated April 13, 2015, stating:

> Please take note that, effective upon receipt of this letter, your legal services are <u>again</u> terminated.
>
> I had verbally informed you that your services were no longer needed since you continued to extend the case on multiple occasions without my consent, failed to inform me of hearings, and appeared to represent Lockett's interest rather than mine. I had to represent myself and was granted a judgment. In addition, following the verbal termination you obviously attended a hearing of which I was not informed and in which you participated to have my judgment overturned. You, knowing that your services had been terminated, falsely held yourself out as continuing to represent me.
>
> * * * *
>
> Obviously there was some court action taken without my knowledge where someone set the judgment aside by scratching it out. Obviously you, claiming to represent me, had to participate in some meeting or hearing for this [to] occur.

Thereafter, Mr. Green moved to withdraw as counsel for Mr. McKinney, and the motion was granted.

The Hearing Panel agreed with Mr. Green that as an officer of the court he had an obligation to be respectful to other lawyers and to be fully honest with the court. The Hearing Panel also accepted Mr. Green's testimony that he had "honestly thought that his client had inappropriately obtained a judgment and that it would be unfair for that judgment to stand" and that, when opposing counsel called, "Mr. Green thought that the right thing to do was to appear with opposing counsel to address the judge." The Hearing Panel pointed out, however, that Mr. Green had failed to address his "corresponding obligation to his client to communicate about this important event, that being a request to overturn a judgment on the merits." The Hearing Panel also was "concern[ed]" that even "after the judge overturned his earlier judgment, Mr. Green did not communicate with Mr. McKinney." With regard to Mr. McKinney's complaint, the Hearing Panel found that, as with Mr. Kizer's complaint, Mr. Green had violated RPC 1.4, regarding client communication. It also found that he had violated RPC 8.4(a), which provides: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct . . . ." The Hearing Panel found the evidence insufficient to establish the Board's alleged violations of RPC 1.16 (declining and terminating representation) and RPC 1.2 (scope of representation).

### C. Mississippi Pro Hac Vice Noncompliance

The parties stipulated to the material facts supporting this complaint and also noted that these facts are set forth in the Mississippi Supreme Court decision of Newberry v. State, 145 So. 3d 652 (Miss. 2014). In short, in 2011, the State of Mississippi charged Weissenger Newberry with first offense DUI, possession of marijuana and cocaine, two counts of assaulting a law enforcement officer, and being a habitual offender. Id. at 653. Mr. Newberry hired Mr. Green to represent him, even though Mr. Green was not licensed to practice law in Mississippi.

Mississippi allows foreign attorneys to be admitted pro hac vice by complying with Mississippi Rule of Appellate Procedure 46(b) ("Mississippi Rule 46(b)"), which provides in relevant part:

(b) Admission of Foreign Attorneys Pro Hac Vice.
(1) *Terminology*

ii. *"Appearance" shall include the appending or allowing the appending of the foreign attorney's name on any pleading or other paper filed or served, or appearing personally before a court . . . .*

. . . .

v. "Local attorney" shall mean an attorney who is licensed and in good standing to practice law in Mississippi.

(2) *Appearance of a Foreign Attorney Pro Hac Vice Permitted. A foreign attorney shall not appear in any cause except as allowed pro hac vice under this Rule 46(b). A foreign attorney who is of good moral character and familiar with the ethics, principles, practices, customs, and usages of the legal profession in this state,* *may, subject to the provisions of this Rule 46(B), appear as counsel pro hac vice in a particular cause before any court . . . in this state upon compliance with the conditions stated in this subdivision.*

. . . .

(4) *Association of Local Attorney. No foreign attorney may appear pro hac vice before any court or administrative agency of this state unless the foreign attorney has associated in that cause a local attorney. The name of the associated local attorney shall appear on all notices, orders, pleadings, and other papers filed in the cause. The local attorney shall*

*personally appear and participate in all trials,* and, unless specifically excused from such appearance by the court or administrative agency, in all pretrial conferences, hearings, other proceedings conducted in open court and all depositions or other proceedings in which testimony is given in this state. By associating with a foreign attorney in a particular cause, the local counsel accepts joint and several responsibility with such foreign attorney to the client, to opposing parties and counsel, and to the court or administrative agency in all matters arising from that particular cause.

(5) *Verified Application, Clerk's Statement and Filing Fees. A foreign attorney desiring to appear pro hac vice before any court or administrative agency of this state shall file with the subject court or administrative agency and with the Clerk of the Supreme Court (1) a verified application* and (2) a statement obtained from the clerk of the Supreme Court indicating all causes or other matters in which the foreign attorney previously requested leave to appear as counsel pro hac vice showing the date and disposition of each request. Such application and statement shall be accompanied by a certificate of service on all parties in accordance with the Mississippi Rules of Civil Procedure.

. . . .

Simultaneously with the filing of the application, the foreign attorney shall pay to The Mississippi Bar the sum of $200 . . . .[7]

. . . .

(7) *Order Authorizing Appearance. A foreign attorney shall not appear as counsel pro hac vice before any court or administrative agency until the foreign attorney certifies to the court or administrative agency that the foreign attorney has provided a copy of the order authorizing such appearance to the Clerk of the Supreme Court.*

Miss. R. App. P. 46(b) (emphases added).

On May 14, 2012, Mr. Green made an appearance in the case, as that term is defined in Mississippi Rule 46(b)(1)(ii), when a scheduling order filed in court listed his name as counsel of record for Mr. Newberry. About a month later, on June 15, 2012, Mr. Green made another appearance in the case, as defined in Mississippi Rule 46(b)(1)(ii), when he filed a motion to dismiss and a request for discovery. He alone signed these

---

[7] By an amendment effective May 10, 2018, this amount was increased to $300.

- 11 -

pleadings as counsel of record and did not list the name of any associated local counsel as Mississippi Rule 46(b)(4) requires.

Both of these appearances occurred before Mr. Green had been admitted pro hac vice. In fact, Mr. Green did not file his application for pro hac vice admission with the Mississippi Supreme Court pursuant to Mississippi Rule 46(b)(5) until June 15, 2012, the same day he filed the motion to dismiss and request for discovery. Mr. Green submitted the required verified application and affidavit to appear pro hac vice and correctly included both a certificate of local counsel signed by Daniel Lofton and a verification of payment of a $200 fee to the Mississippi Bar.

The Mississippi trial court admitted Mr. Green to practice before it during conferences in chambers and in pre-trial proceedings. However, no written order admitting Mr. Green pro hac vice was ever entered, so Mr. Green failed to comply with Mississippi Rule 46(b)(7), which requires an attorney seeking pro hac vice admission to provide a copy of the order authorizing such appearance to the Clerk of the Mississippi Supreme Court and precludes the foreign attorney from appearing as counsel pro hac vice before any court "until the foreign attorney certifies to the court . . . that a copy of the order" has been provided to the Clerk of the Mississippi Supreme Court.

At the beginning of trial, Mr. Green appeared without local counsel, even though Mississippi Rule 46(b)(4) states that "[t]he local attorney shall personally appear and participate in all trials." The prosecuting attorney noted that local counsel was not present but represented that "the state ha[d] no objection whatsoever to Mr. Green proceeding without local counsel being present." The trial court determined that Mr. Green had complied with the Mississippi rules concerning pro hac vice admission and again verbally approved his application to proceed pro hac vice in the criminal court. After the prosecuting attorney erroneously advised the trial judge that Mississippi Rule 46(b) allowed "defense counsel to proceed without local counsel if the judge expressly allows that or makes a ruling as such," the trial judge purported to excuse local counsel from participating. After a one-day trial at which Mr. Green alone represented Mr. Newberry, the jury convicted Mr. Newberry of possession of marijuana, possession of cocaine, and first offense DUI.

Mr. Newberry appealed his convictions and argued that the verdict should be set aside because Mr. Green failed to comply fully with Mississippi Rule 46(b) and because local counsel was absent from the trial. The Mississippi Supreme Court agreed, reversed the convictions, and remanded the case for a new trial. Newberry, 145 So. 3d at 659. In so holding, the Mississippi Supreme Court noted that its enforcement of Mississippi Rule 46(b) "goes not only toward protecting clients' rights, but toward enforcing both society's and the profession's respect for this Court and the processes that have been established for seeking redress." Id. at 658.

- 12 -

The Hearing Panel found that Mr. Green did not knowingly fail to comply with Mississippi Rule 46(b) and that he did not intend to mislead anyone about his status as a Tennessee attorney or his pro hac vice admission to appear in the Mississippi courts.[8] The Hearing Panel also found that: (1) Mr. Newberry knew that Mr. Green was not licensed to practice in Mississippi; (2) Mr. Newberry hired Mr. Green in part because he did not wish to be represented by a Mississippi attorney; (3) Mr. Green failed to comply with Mississippi Rule 46(b) in the several ways described above; and (4) Mr. Green's failure to have local counsel present at trial, as required by Mississippi Rule 46(b), was mitigated to some extent by the fact that both the Mississippi trial judge and prosecutor shared Mr. Green's mistaken belief that the presence of local counsel at trial could be waived. The Hearing Panel emphasized that the other ways in which Mr. Green violated Mississippi Rule 46(b), including his filing of the May 14, 2012 Scheduling Order and the June 15, 2012 motions, also constituted violations of Rule 46(b) and had no relation to the trial judge's or prosecutor's misunderstanding of the rule. The Hearing Panel found that Mr. Green violated RPC 5.5(a), which provides that "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction" and RPC 8.4(d), which provides that a lawyer shall not "engage in conduct that is prejudicial to the administration of justice."

## D. Ruling of the Hearing Panel on Sanction

Based on its findings that Mr. Green violated RPC 1.3, RPC 5.5(a), RPC 8.4(a), and RPC 8.4(d), and twice violated RPC 1.4, the Hearing Panel next considered the question of the appropriate sanction for these violations. The Hearing Panel identified four ABA Standards as guides to its determination: ABA Standards 4.42, 6.23, 7.2, and 8.2. Three of these standards identify suspension as the presumptive sanction and one identifies reprimand as the appropriate sanction.

The Hearing Panel then considered aggravating and mitigating factors, consistent with ABA Standard 9.1, and identified four of each. The Hearing Panel considered Mr. Green's seventeen prior disciplinary sanctions, pattern of misconduct, multiple offenses, and Mr. Green's substantial experience in the practice of law, having been licensed in Tennessee since 1981, as aggravating factors. See ABA Standard 9.22. As mitigating factors, the Hearing Panel considered absence of a dishonest and selfish motive, full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings, remorse, and remoteness of (a number of) Mr. Green's prior disciplinary offenses. See ABA Standard 9.32. The Hearing Panel also noted that the Board had acknowledged both that the Mississippi trial judge's confusion about Mississippi Rule 46(b) should be viewed as a mitigating factor and that Mr. Kizer and Mr. McKinney were difficult clients.

---

[8] The Hearing Panel found the proof insufficient to establish the alleged violations of RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal).

Based upon its consideration of the relevant ABA Standards and the aggravating and mitigating factors, the Hearing Panel imposed a six-month suspension and directed thirty days to be served on active suspension with the remainder to be served on probation with the following conditions:

1.  In fulfilling his annual fifteen hours of continuing legal education ("CLE"), Mr. Green shall complete a minimum of eight hours of CLE specifically addressing law office management, client communication, and client relations;

2. For all new cases accepted during the period of probation, Mr. Green shall have a fee agreement or engagement letter setting forth the scope of his representation, and upon conclusion of every case or his withdrawal from representation, Mr. Green shall send a letter to the client stating that his representation has ended and that he will take no further action in the case;

3. Mr. Green shall engage a practice monitor at his own expense who shall meet with him as often as the practice monitor deems appropriate but no less than once every thirty days.  The practice monitor shall supervise Mr. Green's compliance with the conditions of probation, supervise his office management practices and procedures, monitor his attorney fee agreements and/or engagement letters, and monitor and supervise Mr. Green regarding his adequate communication with clients;

4. Mr. Green shall pay to Mr. McKinney restitution of $500.00 before the expiration of his period of probation.

The Hearing Panel issued another order on January 12, 2017, awarding the Board costs of $1,918.85.  Mr. Green timely filed a petition for review on March 9, 2017, in the Chancery Court for Shelby County.  On October 24, 2017, the Chancery Court entered an order affirming the Hearing Panel's decision.  The Chancery Court also awarded the Board additional costs in the amount of $810.00.  Mr. Green then timely appealed to this Court.

## II. Standard of Review

The Tennessee Supreme Court is the final arbiter of the professional conduct of all lawyers practicing in Tennessee, Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 612 (Tenn. 2010), and the source of authority of the Board and all its functions, Long v. Bd. of Prof'l Responsibility, 435 S.W.3d 174, 178 (Tenn. 2014) (citing Brown v. Bd. of Prof'l Responsibility, 29 S.W.3d 445, 449 (Tenn. 2000)).  Attorneys charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel, which determines whether a violation has occurred and, if so, the appropriate sanction for

the violation.  Bd. of Prof'l Responsibility v. Daniel, 549 S.W.3d 90, 99 (Tenn. 2018) (citing Maddux v. Bd. of Prof'l Responsibility, 409 S.W.3d 613, 621 (Tenn. 2013)). Either party dissatisfied with the hearing panel's decision may appeal to the circuit or chancery court, where review is conducted upon "the transcript of the evidence before the hearing panel and its findings and judgment."  Tenn. Sup. Ct. R. 9, § 1.3 (currently § 33.1(d)).[9]  Either party dissatisfied with the trial court's decision may appeal directly to this Court, which will resolve the appeal based "upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing panel."  Id.  This Court applies the same standard of review as the trial court, Daniel, 549 S.W.3d at 100, and determines whether the hearing panel's findings, inferences, conclusions, or decisions are:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Id. § 1.3 (currently 33.1(b)).  In determining whether substantial and material evidence supports a hearing panel's decision, this Court evaluates whether the evidence "furnishes a reasonably sound factual basis for the decision being reviewed."  Sneed, 301 S.W.3d at 612 (quoting Threadgill v. Bd. of Prof'l Responsibility, 299 S.W.3d 792, 807 (Tenn. 2009), overruled on other grounds by Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 27–28 (Tenn. 2012)); see also Sallee v. Bd. of Prof'l Responsibility, 469 S.W.3d 18, 36 (Tenn. 2015).

We review questions of law de novo but do not substitute our judgment for that of a hearing panel as to the weight of the evidence on questions of fact.  Daniel, 549 S.W.3d at 100 (citing Maddux, 409 S.W.3d at 622; see also Tenn. Sup. Ct. R. 9, § 33.1(b) (2018) (stating that in determining the substantiality of evidence, the court shall not substitute its judgment for that of the hearing panel as to the weight of the evidence on questions of fact).

Finally, this Court's review of attorney disciplinary appeals is conducted in light of our inherent power to promulgate and enforce disciplinary rules and to ensure that these rules are enforced in a manner that preserves both the integrity of the bar and the

---

[9] The 2006 version of Tennessee Supreme Court Rule 9 is used in this case because one of the complaints in this matter was initiated before January 1, 2014, when comprehensive changes to Rule 9 became effective.

public trust in our system of justice.  See Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 647 (Tenn. 2008).  With these overriding principles in mind, we evaluate Mr. Green's arguments.

### III. Analysis

#### A.  Johnny Kizer Complaint

Mr. Green raises a number of challenges to the Hearing Panel's findings that he violated RPC 1.3 (Diligence) and RPC 1.4 (Communication) in his handling of Mr. Kizer's case.  He especially takes issue with the Hearing Panel's finding that Mr. Kizer did not learn of the option of suing Roto-Rooter until after losing the Springleaf case in Circuit Court.  Having reviewed the record, we conclude that substantial and material evidence supports the Hearing Panel's findings concerning the Kizer complaint.

The proof shows that Mr. Green gave both Mr. Kizer and Mr. Higgs, the attorney for Springleaf, the distinct impression that evidence of Roto-Rooter's alleged poor workmanship would be presented in the Circuit Court trial of Springleaf's collection action against Mr. Kizer.  Indeed, Mr. Higgs even subpoenaed a representative of Roto-Rooter to testify about the work it had performed, and Mr. Higgs testified before the Hearing Panel that he believed the Circuit Court may have been swayed by an argument that the Roto-Rooter work Springleaf financed was sub-par.

The proof in the record on appeal also establishes that almost all of Mr. Green's correspondence with Mr. Kizer focused on Roto-Rooter's allegedly defective work.  Indeed, Mr. Green even arranged for a plumber to inspect this work, convinced Roto-Rooter to return to Mr. Kizer's property and inspect its own work, and persuaded Roto-Rooter, with Mr. Higgs's assistance, to extend the already expired warranty.  In short, substantial and material evidence supports the Hearing Panel's finding that Mr. Green went to trial on the Springleaf matter without adequately informing Mr. Kizer of the issues he planned to address and its finding that, even though Mr. Green "did diligently attempt to assist Mr. Kizer in getting Roto-Rooter to correct any improper plumbing work (if any improper plumbing work even existed)[,] he failed to adequately explain to Mr. Kizer that none of that, in Mr. Green's opinion, had anything whatsoever to do with the collection matter."

Mr. Green continues to argue that he actually did advise Mr. Kizer of the option of suing Roto-Rooter.  Mr. Kizer denied receiving this advice until after the Circuit Court trial on the Springleaf matter.  Mr. Green offered no correspondence to substantiate his claim that he provided this information to Mr. Kizer, and he also failed to present an engagement letter outlining the scope of his representation of Mr. Kizer.  As the Hearing Panel noted, an engagement letter of this sort "would have gone a long way towards

clarifying this matter." But, even accepting at face value Mr. Green's testimony that he provided this information to Mr. Kizer, this testimony creates, at most, a factual dispute. The Hearing Panel resolved this disputed fact against Mr. Green. As previously explained, this Court does not substitute its judgment for that of the Hearing Panel on questions of fact. Accordingly, we reject Mr. Green's challenges to the Hearing Panel's findings as to the Kizer complaint. See Daniel, 549 S.W.3d at 100.

### B. McKinney Complaint

Mr. Green also disagrees with the Hearing Panel's findings that he violated RPC 1.4 (Communication) and RPC 8.4(a) (Misconduct) in his handling of the McKinney matter. We conclude that substantial and material evidence supports the Hearing Panel's findings. The proof is undisputed that Mr. Green failed to inform Mr. McKinney that: (1) opposing counsel intended to go to court to seek to set aside the default judgment awarded to Mr. McKinney; (2) Mr. Green had agreed to appear in court along with opposing counsel; and (3) the judgment had been set aside. Mr. McKinney learned the judgment had been set aside from an employee of the clerk's office while he was attempting to utilize it to obtain possession of the van.

Although Mr. Green testified that he had believed Mr. McKinney obtained the judgment fraudulently, Mr. Green offered no proof to support this belief. Mr. Green was not in court on the date the judgment was entered and failed to speak with Mr. McKinney to determine what had transpired. Mr. McKinney offered the only evidence about how the judgment was obtained. According to Mr. McKinney, he appeared in court, but neither Mr. Green nor opposing counsel was present. After the docket call, the judge addressed Mr. McKinney, asked what relief he was seeking, and entered a default judgment in his favor for possession of the van. This unrefuted description of how the default judgment was entered does not raise any hint of fraud. Overwhelming proof supports the Hearing Panel's findings that Mr. Green violated RPC 1.4(a) and RPC 8.4(a).

### C. Noncompliance with Mississippi Pro Hac Vice Rule

Mr. Green also takes issue with the Hearing Panel's finding that his failure to comply with Mississippi Rule 46(b) violated RPC 5.5(a) (Unauthorized Practice of Law) and RPC 8.4(d) (Misconduct). Mr. Green contends that the Mississippi trial court authorized his pro hac vice admission, meaning he did not engage in the unauthorized practice of law, and that his conduct was not prejudicial to the administration of justice. Again, we conclude that substantial and material evidence supports the Hearing Panel's findings.

- 17 -

As both the Mississippi Supreme Court and the Hearing Panel found, before he had even applied for pro hac vice admission, Mr. Green made an appearance in the case on May 14, 2012, when his name appeared on a scheduling order filed with the trial court. He made another appearance before obtaining pro hac vice admission on June 15, 2012, by filing a motion to dismiss and discovery requests. In fact, Mr. Green submitted his application for pro hac vice admission *on the same day* that he filed the motion to dismiss and request for discovery. He failed to include local counsel's name on either of these pleadings. The record is clear that Mr. Green failed to comply with the dictates of Mississippi Rule 46(b). It is true, as Mr. Green emphasizes, that the Mississippi trial court also failed to comply with Mississippi Rule 46(b). But the Mississippi trial court's errors do not remedy Mr. Green's noncompliance or absolve him of the obligation to satisfy Mississippi Rule 46(b) before undertaking representation of his client in Mississippi, a jurisdiction in which he is not licensed. The Hearing Panel's finding that Mr. Green violated RPC 5.5(a) and engaged in the unauthorized practice of law by appearing in the Mississippi case without complying with Mississippi Rule 46(b) is grounded on a firm, material, and substantial evidentiary basis.

Substantial and material evidence also supports the Hearing Panel's finding that Mr. Green's failure to comply with Rule 46(b) amounted to conduct prejudicial to the administration of justice in violation of RPC 8.4(d). It is undisputed that the Mississippi Supreme Court reversed Mr. Newberry's convictions and remanded for a new trial because of Mr. Green's failure to comply with Rule 46(b). We agree with the Hearing Panel and the Board that Mr. Green's failure to comply thus amounts to conduct prejudicial to the administration of justice. See In re Hawver, 339 P.3d 573, 589 (Kan. 2014) (stating that the attorney's incompetent representation of his client, which resulted in the retrial of a capital murder case, was a significant prejudice to the administration of justice in violation of Kansas's version of RPC 8.4(d)).

Finally, Mr. Green's argument that the Hearing Panel should have merged the violation of RPC 5.5(a) with the violation of RPC 8.4(d) is without merit. Mr. Green is correct that merger is appropriate in criminal cases where, for example, a jury returns guilty verdicts on two counts of an indictment which charge alternative theories of committing the same offense. See, e.g., State v. Berry, 503 S.W.3d 360, 392 (Tenn. 2015). But disciplinary hearings are not criminal trials and do not include all the due process protections that apply in criminal trials. Moncier v. Bd. of Prof'l Responsibility, 406 S.W.3d 139, 157 (Tenn. 2013). More importantly, RPC 5.5(a) and RPC 8.4(d) are separate and distinct, and a violation of one does not necessarily amount to a violation of the other. This argument is without merit.

### D. *Appropriateness of the Sanction*

Finally, Mr. Green argues that the sanction of suspension is excessive and unnecessary and the need for suspension was not established by substantial and material evidence. He also asserts that the necessity of a practice monitor was not established by substantial and material evidence. Mr. Green maintains that there are no "lingering effects" from any of his misconduct. He emphasizes the mitigating factors the Hearing Panel found, reiterates his remorse and embarrassment for failing to comply with Mississippi Rule 46(b), and asserts that his active suspension from the practice of law "would not serve any societal purpose." We disagree.

To assess the appropriateness of the disciplinary sanction in a given case, we begin, as did the Hearing Panel here, with the ABA Standards. See Tenn. Sup. Ct. R. 9, § 8.4 (currently § 15.4); Maddux, 409 S.W.3d at 624. The ABA Standards are "guideposts" rather than rigid rules for determining appropriate and consistent sanctions for attorney misconduct. Maddux, 409 S.W.3d at 624. As the Hearing Panel recognized, the first step under the ABA Standards is to identify the presumptive sanction based on the following considerations: (1) the ethical duty the lawyer violated—whether to a client, the public, the legal system, or duties as a professional; (2) the lawyer's mental state; and (3) the extent of the actual or potential injury caused by the lawyer's misconduct. Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 268 (Tenn. 2012) (citing the ABA Standards, Preface); see also ABA Standard 3.0. Next, aggravating and mitigating factors are considered to determine whether the presumptive sanction should be increased or decreased. Id. (discussing ABA Standard 9).

Here, the Hearing Panel identified the following four ABA Standards as relevant to determining the presumptive sanction:

> ABA Standard 4.42
>> Suspension is generally appropriate when:
>> (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
>> (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

> ABA Standard 6.23
>> Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

ABA Standard 7.2
>Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

ABA Standard 8.2
>Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

The Hearing Panel next appropriately considered aggravating and mitigating factors and correctly recognized that those enumerated in ABA Standards 9.22 and 9.32 are "illustrative rather than exclusive." Lockett, 380 S.W.3d at 28. The Hearing Panel found four aggravating factors established by the proof, specifically Mr. Green's seventeen prior disciplinary offenses, his pattern of misconduct, his multiple offenses in this case, and his substantial experience in the practice of law, having been licensed since 1981. The Hearing Panel agreed with the Disciplinary Counsel that Mr. Green's seventeen prior disciplinary offenses should be given great weight in aggravation. The proof overwhelmingly supports the Hearing Panel's consideration of these aggravating factors.

The Hearing Panel also found proof of four mitigating factors enumerated in ABA Standard 9.32, specifically: (1) absence of a dishonest or selfish motive; (2) full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings; (3) remorse; and (4) remoteness of (a number of) Mr. Green's prior offenses. The Hearing Panel further noted the Disciplinary Counsel's acknowledgements that the Mississippi trial judge's confusion about Mississippi Rule 46(b) should be viewed as a mitigating factor and that Mr. Kizer and Mr. McKinney were difficult clients. After engaging in this analysis, the Hearing Panel imposed the six-month suspension and directed that thirty days were to be served on active suspension with the remainder on probation.

The record fully supports the Hearing Panel's decision. "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 1.1; see also Hornbeck v. Bd. of Prof'l Responsibility, 545 S.W.3d 386, 396–97 (Tenn. 2018) (citing ABA Standard 1.1) ("While the attorney disciplinary process is punitive in some respects, its purpose is to safeguard the administration of justice, protect the public from the misconduct or unfitness of members of the legal profession, and preserve the confidence of the public in the integrity and

trustworthiness of lawyers in general."). Although Mr. Green insists that there are no "lingering effects" from his misconduct, his "suspension is commensurate with the larger purpose of attorney discipline, which includes preserving the public's confidence in the profession." In re Cope, 549 S.W.3d 71, 77 (Tenn. 2018).

Mr. Green has a lengthy history of prior disciplinary violations spanning from 1990 through 2015. He has avoided any period of active suspension to this point. Of his seventeen prior sanctions, thirteen involved violations of RPC 1.4. Clearly, sanctions less severe than suspension have not been sufficient to ensure that Mr. Green complies with the Rules of Professional Conduct. See Sneed, 301 S.W.3d at 618 ("He has not heeded lessons from facing numerous prior disciplinary proceedings and, in fact, continues to repeat the same mistakes.") As this Court emphasized in Sneed, a lawyer's "unwillingness to abide by the rules of the profession despite years of disciplinary action taken against him[] can do little but add to the cynicism about lawyers and foster disrespect for the administration of justice that ultimately does great harm to the public, the legal system, and the profession of law." Id. The proof in the record and the purpose of the disciplinary rules fully support the Hearing Panel's decision imposing a six-month suspension with thirty days of active suspension and the remainder on probation with conditions.

We also reject Mr. Green's argument that the proof fails to establish the necessity of a practice monitor as a condition of his probation. Again, the record demonstrates that Mr. Green has a history of failing to communicate adequately with clients and failing to manage his law practice well. This history is evidenced by a May 3, 2004 Order of this Court, introduced at the disciplinary hearing, requiring Mr. Green to follow all the recommendations of a legal management service that had evaluated his law practice. Requiring Mr. Green to obtain a practice monitor to ensure his compliance with the other conditions of probation is entirely appropriate in light of his misconduct in this case and his prior disciplinary record.

## IV. Conclusion

For the reasons stated herein, we affirm the judgment of the Chancery Court upholding the decision of the Hearing Panel. Costs of this appeal, for which execution may issue if necessary, are taxed to Gerald S. Green.

_____
CORNELIA A. CLARK, JUSTICE